**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1808
_____

BAG OF HOLDINGS, LLC,
                                        Appellant

v.

CITY OF PHILADELPHIA; KENYATTA JOHNSON, individually and in his official
capacity as Councilman for the Second District of Philadelphia
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-14-cv-06774)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit LAR 34.1(a)
November 8, 2016
_____

Before: McKEE and RESTREPO, *Circuit Judges*, and HORNAK,[*] *District Judge.*

(Filed: March 16, 2017)
_____

OPINION[**]
_____

---

[*]Honorable Mark R. Hornak, District Judge for the United States District Court for
the Western District of Pennsylvania, sitting by designation.

[**]This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

HORNAK, *District Judge*.

Bag of Holdings, LLC ("BOH") appeals from the order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment for Kenyatta Johnson, a Philadelphia City Councilman. We will affirm the District Court's judgment in favor of Councilman Johnson.

**I.**

Because we write primarily for the parties, we set forth only those facts relevant to our conclusion.

The Philadelphia City Code requires that all City-owned real property be advertised to the public and opened to competitive bids before it is sold. No sale becomes final without the approval of the City Council. In 2012, a City land-sale policy was issued for the sale of real property owned by the Philadelphia Redevelopment Authority and other City agencies. Although the City policy was never codified into law, it directed agencies to utilize an "open market" approach for the sale of a property when a prospective purchaser offered less than the asking price or when multiple entities expressed an interest in purchasing it.

In 2014, the City land-sale policy was revised so that City agencies could use several different methods to sell a parcel of land: by giving preference to a buyer who intended that the land be used for a public purpose, determining the most qualified applicant, utilizing a competitive bidding process, or engaging in a direct sale. In the event of a direct sale, the sale price would be determined by an appraisal and the Real Estate Review Committee would review the agency's decision to sell. In any case, once

2

the selling agency signed off on the sale, the Vacant Property Review Committee would assess the sale and supporting rationale. If the Vacant Property Review Committee approved the sale, it would draft a final-approval resolution for introduction in City Council. Then, if the City Council passed the resolution, the sale would be finalized and the property transferred to the buyer.

Between 2012 and 2014, BOH submitted expressions of interest for approximately twenty City-owned lots. Each of these lots also received expressions of interest from other prospective purchasers. Nevertheless, all of the lots were sold outside of the competitive sales process, and BOH was therefore unable to purchase any of them. On at least some occasions, a representative from Councilman Johnson's office had requested that the Redevelopment Authority approve the direct sale of a property over multiple expressions of interest. As it turned out, seven of the lots were sold directly to friends or political contributors of Johnson. And some were sold below market value and without the completion of an appraisal or a review by the Real Estate Review Committee— allegedly in violation of the City's land sale policy.

BOH filed this suit claiming that Councilman Johnson violated his constitutional right to equal protection under the Equal Protection Clause of the Fourteenth Amendment. Johnson raised the defense of qualified immunity, and the District Court, concluding he was entitled to it, granted summary judgment in Johnson's favor. The District Court held that the constitutional right alleged to have been violated was not clearly established for qualified immunity purposes.

**II.**

The District Court had jurisdiction over this case under 28 U.S.C. § 1331. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary, and we apply the same standards that the District Court applied in determining whether summary judgment was appropriate. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Viewing the evidence in the light most favorable to the nonmovant, summary judgment is appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). "The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

The doctrine of qualified immunity shields government officials "from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). It "protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). To determine whether a government official is entitled to qualified immunity, we ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether that right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194,

4

201 (2001). We need not undertake the inquiry in that order. *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009).

For a government official to have "fair warning" that his or her actions violate a person's rights, *see United States v. Lanier*, 520 U.S. 259, 270 (1997), the contours of the right alleged to have been violated "must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle*, 132 S. Ct. at 2093. Although it is not necessary to have a case "directly on point," *see Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015), "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 132 S. Ct. at 2093. The Supreme Court has repeatedly cautioned that courts should "not . . . define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"[1] *Id.*

Recognizing its discretion to do so, the District Court bypassed the question of whether BOH's rights were violated and considered first whether the right allegedly violated was clearly established, concluding that it was not. Whether the right allegedly violated was clearly established is a question of law over which our review is unrestricted. *Atkinson v. Taylor*, 316 F.3d 257, 261 (3d Cir. 2003).

---

[1] The Supreme Court recently reiterated these longstanding principles in a *per curiam* decision addressing the application of qualified immunity in an excessive force case. *See White v. Pauly*, 137 S. Ct. 548, 551-52 (2017).

5

**III.**

Broadly speaking, the Equal Protection Clause of the Fourteenth Amendment requires that similarly situated individuals be treated alike absent a rational basis to distinguish between them. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-42 (1985). BOH argues that Councilman Johnson violated its equal protection rights under a "class of one" theory, which was endorsed by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Given the particular facts alleged in this case, we conclude, as did the District Court, that the right at issue was not clearly established for qualified immunity purposes.

In *Olech*, a property owner asked the Village of Willowbrook to connect her property to the municipal water supply. *Id.* at 563. Although the Village required only a 15-foot easement from other property owners seeking to access the water supply, it conditioned the connection of Olech's water on the grant of a 33-foot easement. *Id.* Olech sued the Village, claiming that the demand of an additional 18-foot easement violated the Equal Protection Clause of the Fourteenth Amendment. *Id.* The Supreme Court granted certiorari to determine whether, under the Equal Protection Clause, a plaintiff may maintain an action as a "class of one"—in other words, without alleging membership in a class or group. *Id.* at 564. The Supreme Court concluded, in general terms, that a plaintiff may proceed on a "class of one" theory under the Equal Protection Clause where "she alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Allegations of

6

irrational and wholly arbitrary disparate treatment were sufficient, regardless of subjective motivation, to state a claim for relief. *Id.* at 565.

BOH urges us to read *Olech* so broadly that Councilman Johnson's alleged conduct in this case—operation of the City's land sale process in a way that resulted in the sale of one-third of the lots in which BOH was interested to friends and political contributors—amounts to a clear violation of the Equal Protection Clause. But even assuming *Olech*'s holding allows BOH to state a constitutional claim on equal protection grounds,[2] it does not necessarily follow that *Olech*'s holding, so read, is sufficiently clear to strip Johnson of his qualified immunity on these facts. That conclusion would require us to attribute to "every reasonable official" the knowledge that favorable treatment for political contributors in the context of a city land sale so clearly amounts to an equal protection violation that the question is "beyond debate." *Reichle*, 132 S. Ct. at 2093.

When addressing qualified immunity in the context of equal protection claims, we have cautioned that "[i]t is not enough to address the plaintiffs' equal protection claim in the broad sense." *Hynson ex rel. Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1032 (3d Cir. 1988). Instead, a court "must focus on [the] particularized right," *id.*, defining "the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). Stripping qualified immunity based upon broadly stated abstractions of the right at issue "would . . . convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability"

---

[2] We need not, and do not, decide here whether the reach of *Olech* was sufficiently sweeping to allow BOH to state a constitutional claim on equal protection grounds. Further, like the District Court, we need not address the question of legislative immunity.

7

where a party alleges the "violation of extremely abstract rights." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

In *Olech* itself, Justice Breyer, concurring in the result, recognized a concern that the Court not turn "ordinary violations of city or state law into violations of the Constitution." 528 U.S. at 565 (Breyer, J., concurring). He cautioned against, for example, "transforming run-of-the-mill zoning cases into cases of constitutional right." *Id.* at 566. "It might be thought that a rule that looks only to an intentional difference in treatment and a lack of a rational basis for that different treatment would work such a transformation." *Id.* at 565.

Examining its own decision in *Olech*, the Supreme Court later clarified that not every instance of individualized differential treatment gives rise to an equal protection violation. Equal protection suits under a "class of one" theory are appropriate where "it appears that an individual is being singled out by the government" such that "the specter of arbitrary classification is fairly raised." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008). The equal protection claim was sufficiently pled in *Olech* because the municipality singled out Olech for differential treatment when it required a 33-foot easement from him rather than the 15-foot easement it had required in all other instances.[3] *Id.* at 602-03.

---

[3] The Supreme Court went on to restrict the scope of "class of one" equal protection claims, holding that they have no place in the public employment context. *Engquist*, 553 U.S. at 594.

Here, "fram[ing] the right at issue 'in a more particularized, and hence more relevant, sense,' 'in light of the case's specific context,'" *see Spady*, 800 F.3d at 638 (citation omitted), we cannot charge Councilman Johnson with notice of a clearly established constitutional right based upon an open-ended application of *Olech*. For one thing, *Olech* dealt with disparate treatment in the provision of municipal water where there was a clearly established, uniform practice in place—a context quite different from the sale of City-owned land under an evolving City policy which may in its details be at odds with the actual text of the City Code. Importantly, even if BOH's allegations are true, Johnson did not intentionally single out BOH alone for uniquely differential treatment—a fact the Supreme Court subsequently recognized as critical to its holding in *Olech. See Engquist*, 553 U.S. at 602-03.

BOH does not cite, and the Court has not found, any precedent clearly establishing that operation of a governmental land sale process which results in more favorable treatment for friends and political contributors amounts to an equal protection violation. To now say that *Olech* established that principle of law would be too near to concluding that any disparate treatment by a government actor without a rational basis—regardless of the factual circumstance—so clearly establishes a violation of the Equal Protection Clause of the Fourteenth Amendment that the question is beyond debate. Such a broad pronouncement would fail to define the right at issue with sufficient specificity, and it would run contrary to a long-recognized purpose of qualified immunity: to shield public

officials from potentially disabling threats of constitutional liability except in those situations where they have fair warning that their conduct violates federal law.[4]

Accordingly, we agree with the District Court's conclusion that Councilman Johnson is entitled to qualified immunity.

**IV.**

BOH also contends that the District Court erred when it denied BOH's Motion for Leave to File a Second Amended Complaint. In its Notice of Appeal, however, BOH cites only the District Court's opinion and order granting summary judgment in favor of Councilman Johnson on qualified immunity grounds. We conclude that BOH's Notice of Appeal does not provide appellate jurisdiction to consider whether the District Court erred when it denied BOH leave to file a Second Amended Complaint.

Federal Rule of Appellate Procedure 3(c) specifies that a notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c). Rule 3(c) is "jurisdictional in nature" and "[we] may not waive its jurisdictional requirements, even for good cause." *Massie v. U.S. Dep't of Hous. and Urban Dev.*, 620 F.3d 340, 348 (3d Cir. 2010) (citing *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988)). Therefore, despite the fact that Appellees do not contest our jurisdiction to consider the District Court's order denying leave to amend, we have the obligation to consider that issue *sua sponte*. *See United States v. Scarfo*, 263 F.3d 80, 87 (3d Cir. 2001) ("[C]onsent does not confer appellate jurisdiction.").

---

[4] The question of whether Councilman Johnson's conduct would violate city or state law if BOH's allegations were true is not before us, and we take no position on it. *See Olech*, 528 U.S. at 565 (Breyer, J., concurring).

10

Although "we liberally construe the requirements of Rule 3(c)," *see Pacitti v. Macy's*, 193 F.3d 766, 776 (3d Cir. 1999), "[w]hen an appeal is taken from a specified judgment only or from a part of a specified judgment, the court of appeals acquires thereby no jurisdiction to review other judgments or portions thereof not so specified or otherwise fairly to be inferred from the notice as intended to be presented for review on the appeal." *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977). "[U]nder the merger rule, the designated final judgment 'draws in question all prior non-final orders and rulings which produced the judgment' where '(1) there is a connection between the specified and unspecified order; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.'" *Pension Trust Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 269 (3d Cir. 2013) (quoting *Weist v. Lynch*, 710 F.3d 121, 127 (3d Cir. 2013); *Elfman*, 567 F.2d at 1254) (citations omitted).

Here, although the intention to appeal the District Court's order denying leave to file a Second Amended Complaint is apparent from BOH's principal brief, and although Appellees appear to have had a full opportunity to address that issue, we cannot say—even liberally applying Federal Rule of Appellate Procedure 3(c)—that the District Court's denial of leave to file a Second Amended Complaint "produced" the District Court's Judgment applying qualified immunity to Councilman Johnson or that the two orders are "connect[ed]" such that the Notice of Appeal confers appellate jurisdiction to consider that issue. *Id.* BOH's Motion for Leave to File a Second Amended Complaint proposed to add a supplemental state law claim against the City, an entity which was no

11

longer a party to the case at the time of the final judgment from which BOH appealed. The City was no longer a party because, some months earlier, BOH had conceded that the District Court should dismiss all of its claims against the City, and the District Court, recognizing BOH's concession, did so—months before it granted Johnson summary judgment on qualified immunity grounds.

We therefore lack appellate jurisdiction to review the District Court's denial of leave to file a Second Amended Complaint.

## V.

For the foregoing reasons, we will affirm the District Court's judgment in favor of Councilman Johnson.