FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

December 13, 2021

Christopher M. Wolpert
Clerk of Court

_____

REYES FLORES; PAT FLORES,

    Plaintiffs - Appellants,

v.

CITY OF FARMINGTON; STEVEN
HEBBE; NICK BLOOMFIELD;
MATTHEW VEITH; TOM SWENK;
TAFT TRACY, all in their individual
capacities,

    Defendants - Appellees.

No. 21-2021
(D.C. No. 1:18-CV-00402-KWR-JFR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Brothers Reyes Flores and Pat Flores appeal from the district court's judgment

in favor of the defendants in their lawsuit alleging (1) retaliation against both of them

in violation of their First Amendment right to free speech, and (2) discrimination and

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

retaliation against Reyes in violation of both federal and state employment laws.[1]

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

The City of Farmington, New Mexico (the City), employs Reyes and Pat as patrol officers with the Farmington Police Department. Both Reyes and Pat "are practicing Christians" who "have long held deep-rooted Christian beliefs." Aplt. App., Vol. 1 at 170. Both Reyes and Pat previously served in capacities other than as patrol officers. In addition to serving on the SWAT team, Reyes worked as a training officer, an ethics instructor, and a field training officer (FTO). Pat oversaw the training academy from 2014 to 2017.

## I.    Facts Underlying Reyes' Claims

In September 2016, then-Sergeant Matt Veith notified Reyes that he was the subject of an Internal Affairs (IA) investigation. The investigation arose out of a report that a female employee had concerns that Reyes was hostile to women, but it soon became intertwined with concerns about Reyes' discussions of religion in connection with his duties as a training officer, ethics instructor, and FTO. Veith's investigation report summarized multiple interviews indicating that Reyes had explicitly or implicitly communicated religious beliefs to cadets and trainees, including beliefs about women's roles inside and outside the home. Ultimately, Veith found that "[w]hile in a position of authority over numerous recruits as a

_____

[1] Because the appellants share a surname, to avoid confusion we refer to them by their first names.

Training Officer teaching Ethics, a firearms instructor, and an FTO, Ofc. Reyes Flores used his personal religious views and lifestyle as an example of ethical behavior which caused offense to subordinates causing a hostile work environment." *Id.* Vol. 2 at 515. He concluded that there was sufficient evidence to prove that Reyes violated the City's rules regarding equal employment opportunity and affirmative action.

The department issued Reyes a written reprimand, removing him from training responsibilities and the SWAT team and returning him to the Patrol Division. As a result, he lost monetary stipends associated with the specialty positions. Reyes requested access to the investigation memorandum and a grievance hearing, but Police Chief Steve Hebbe stated that his requests were not grievable. A committee for the City disagreed, however, and Reyes filed a grievance. In response, Hebbe reduced the discipline to a counseling rather than a written reprimand but did not reinstate Reyes to his former positions. Reyes alleges he has been denied subsequent opportunities based on this discipline.

## II.    Facts Underlying Pat's Claim

Pat was promoted to corporal in 2007 and to sergeant in 2011. He sought promotion to lieutenant in 2014, 2015, 2016, and then 2017. After Pat's non-selection in 2017, he received feedback from two captains, Taft Tracy and Baric Crum. Tracy noted that an interview panel perceived Pat to be a teacher, and indicated that he "had not spent enough time hanging around the station and, as [Tracy] put it, hobnobbing with the Chief." *Id.* Vol. 3 at 618. Crum stated that he

3

would have liked to have heard more about Pat's accomplishments.  Ultimately, however, Tracy indicated to Pat that he was not chosen "because [his] personal beliefs were too strong."  *Id.*  "[Tracy] acknowledged that [Pat] and [his] brother, Reyes, had very strong beliefs about marriage and religion and family and that those were good, but they were too strong, and as a result – the specific example he gave out . . . was that, if given the opportunity to walk in a Gay Pride parade, [Pat] would not do it."  *Id.*  Tracy "felt like [Pat's] personal beliefs kept him from being in the same direction as the chief."  *Id.* at 629.

Also in 2017, Pat's three-year term as the director of the training academy expired.  Hebbe refused to renew the term for another year.  Pat lost a stipend associated with the position, and in 2018 he was placed back on patrol.

## III.    The Litigation

As relevant to this appeal, both Reyes and Pat asserted a 42 U.S.C. § 1983 claim alleging retaliation in violation of their First Amendment right to free speech. Reyes further asserted claims of religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act (NMHRA).  On the First Amendment claim, the district court (1) granted judgment on the pleadings to the individual defendants based on qualified immunity, and (2) granted summary judgment to the City, concluding that Reyes and Pat had not demonstrated any constitutional violation.  The district court further granted summary judgment to the City on Reyes' Title VII claims, and to all the defendants on his NMHRA claims, holding that Reyes failed to establish that the City's

4

proffered reasons for its actions were pretext for discrimination or retaliation. Reyes

and Pat now appeal from the disposition of those claims.[2]

## DISCUSSION

### I.    Standards of Review

"We review a district court's grant of a motion for judgment on the pleadings

de novo, using the same standard that applies to a Rule 12(b)(6) motion." *Crane v.*

*Utah Dep't of Corr.*, 15 F.4th 1296, 1302 (10th Cir. 2021) (internal quotation marks

omitted). "To survive a motion for judgment on the pleadings, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Id.* at 1302-03 (footnote and internal quotation marks

omitted).

Similarly, "[w]e review a district court's grant of summary judgment de novo,

applying the same standard as the district court." *Brammer-Hoelter v. Twin Peaks*

*Charter Acad.*, 492 F.3d 1192, 1201 (10th Cir. 2007). Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We "view the evidence and draw reasonable inferences therefrom in the light most

favorable to the nonmoving part[ies]," Reyes and Pat. *Knopf v. Williams*, 884 F.3d

---

[2] To the extent that Reyes and Pat intended to appeal from the disposition of any other claims, their opening brief did not adequately address them. *See Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1211 (10th Cir. 2020) (holding that arguments that are inadequately briefed are waived).

939, 946 (10th Cir. 2018). "Furthermore, because this case involves the First Amendment, we have an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Brammer-Hoelter*, 492 F.3d at 1201 (internal quotation marks omitted).

## II.    First Amendment Retaliation § 1983 Claim

### A.    Individual Defendants

The district court granted judgment on the pleadings to the individual defendants based on qualified immunity. Individual government employees are entitled to qualified immunity unless (1) they violated a constitutional or statutory right, and (2) the right was clearly established at the time of action. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012). The court may address these requirements in any order. *See id*. The district court did not address the constitutional-violation prong, but instead granted judgment on the ground that Reyes and Pat had not shown that the law was clearly established when the defendants acted.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (brackets and internal quotation marks omitted). "This ordinarily means there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Crane*, 15 F.4th at 1303 (internal quotation marks omitted).

6

"The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law." *Id.* (internal quotation marks omitted).

In their opening brief, Reyes and Pat focus on the factual aspects of the district court's dismissal decision, asserting that it misunderstood the allegations of the First Amended Complaint and miscast the relevant issues. But their argument stops short of identifying any opinion, from this or any other court, that would clearly establish that the individual defendants' actions constituted retaliation against Reyes and Pat in violation of their First Amendment right to freedom of speech. Their failure to challenge the ground for the district court's ruling acts as a waiver. *See Schreiber v. Cuccinelli*, 981 F.3d 766, 778 (10th Cir. 2020), *cert. denied*, 211 L. Ed. 2d 101 (U.S. Oct. 4, 2021) (No. 21-94).[3] And "[i]f the plaintiff fails to satisfy either part of the [qualified immunity] inquiry, the court must grant qualified immunity." *Knopf*, 884 F.3d at 944 (internal quotation marks omitted). Because Reyes and Pat have failed to show that the law was clearly established, we affirm the grant of qualified immunity to the individual defendants on this claim.

### B.     City of Farmington

The district court granted summary judgment to the City on the § 1983 First Amendment retaliation claim, concluding that Reyes and Pat had not established the City violated their right to free speech. The parties agreed that the elements set forth

---

[3] Reyes and Pat attempt to discuss the state of the law in their reply brief, but that effort comes too late. *See High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1187 (10th Cir. 2019) (holding that issues raised in reply brief but not in opening brief are waived).

in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968), govern the analysis.  Those elements are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (internal quotation marks omitted).  The first three factors are questions of law, while the last two generally are questions of fact.  *See id.*  "To prevail, a plaintiff must establish all five elements." *Knopf*, 884 F.3d at 945.  The district court held that Reyes failed to satisfy the first and third elements, and Pat failed to satisfy the fourth and fifth elements.

### A.     Reyes' Claim

The district court held that Reyes failed to establish that his speech was not pursuant to his official duties and that his free speech interests outweighed the government's interest, as an employer, in promoting the efficiency of the public service.  We need consider only the first element because the district court did not err in concluding that Reyes' speech was made pursuant to his official duties.

Among other issues, the IA investigation summarized interviews indicating that Reyes made comments about his beliefs, including his beliefs about women, while acting as an FTO or instructor.  Female cadet A.P. reported that, while serving as her FTO, Reyes "commented about his family, beliefs, and women," including "comments about women 'being in their place.'"  Aplt. App., Vol. 2 at 509.  More

8

than one female cadet stated that he spoke about his family; in one example, while transporting cadets, including female cadets R.O. and C.M., he stated that his daughters could not cut their hair until they were 18, and then he would get their hair when they did.  C.M. stated that she and R.O. "felt [the discussion] was weird and inappropriate." *Id.* at 510.  R.O. also stated that while transporting cadets in a police vehicle, Reyes would turn on Christian radio, ask if they liked the music, and then say, "'If you didn't, too bad.'" *Id.* at 510.  At least three interviewees stated that he used examples from his own life and his own beliefs while teaching firearms and ethics, and a fourth "said there was a 'running joke' that there was 'more preaching than teaching' during firearms training." *Id.* at 514.

Reyes asserts that the district court erred in assessing the defendants' proffered undisputed facts.  We are not persuaded, however, that he adequately controverted material facts.  For example, the City asserted that the IA investigation began when R.O. reported to Corporal Nick Bloomfield a concern that Reyes was hostile to women.  Reyes repeatedly asserts that R.O. denied she ever said that Reyes hates women.  *See* Aplt. Opening Br. at 20, 27, 31.  But the evidence cited in support is Veith's deposition, in which he acknowledged that *Reyes did not state to R.O.* that he hates women.  *See id.* at 20 (citing Aplt. App., Vol. 2 at 484 (citing *id.* at 521)).  That is not the same as saying that *R.O. never said to Bloomfield* that Reyes hates women.  In another example, involving the Christian radio allegations, Reyes asserts that R.O. stated that he was joking.  *See* Aplt. Opening Br. at 21.  But again, he mischaracterizes R.O.'s position.  In her IA interview, she stated that Reyes "tried to

9

joke around with us, but it didn't matter what our feelings were on something, it was, 'nope, it's mine, that's how it's going to be.'" Aplt. App., Vol. 2 at 545. R.O.'s position thus is more accurately characterized as Reyes might say that he was joking, but he really was not.

Reyes maintains that he did not speak about religion "in formal training and instruction" and that he "has stated consistently that any such conversations related to religion happened in the context of informal conversation and setting." Aplt. Opening Br. at 28-29; *see also id.* at 28 (objecting that "the district court cited to no instance of speech that occurred in an instructional or training setting"). But he does not specify what he means by "formal training and instruction" versus "informal conversation and setting." And as the district court noted, he did not describe the circumstances of the allegedly informal speech. Reyes criticizes the district court for this comment, stating that it was not his "burden on summary judgment to prove where the contested speech occurred and when—that remains Defendants' burden throughout summary judgment." Aplt. Opening Br. at 29. But it is an element of Reyes' claim, on which he bears the burden, that the contested speech was not made pursuant to official duties. *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007). And once the City set forth evidence to support its version of the facts, which indicated that Reyes spoke while he was training cadets, it was Reyes' burden to offer contradictory evidence to create a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("[W]hen a properly supported motion for summary judgment is made, the adverse

10

party must set forth specific facts showing that there is a genuine issue for trial."
(footnote and internal quotation marks omitted)).

This court has "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (internal quotation marks omitted). "[W]e must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship," *Brammer-Hoelter*, 492 F.3d at 1204, "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties," *Rohrbough*, 596 F.3d at 746.

Under a practical view, Reyes cannot create a genuine issue of material fact simply by attempting to parse his speech into broad categories of formal instruction and informal conversations. Courts have recognized that, in an instructional context, a governmental employer has an interest in regulating an employee's interactions with students even outside of formal teaching time. *See Piggee v. Carl Sandburg Coll.*, 464 F.3d 667, 671 (7th Cir. 2006) (recognizing that "the instructor/student relationship does not end the moment the instructional period is over"); *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522 (9th Cir. 1994) (per curiam) ("While at the high school, whether he is in the classroom or outside of it during contract time, Peloza is not just any ordinary citizen. He is a teacher."); *Bishop v. Aronov*, 926 F.2d 1066, 1074 (11th Cir. 1991) ("Tangential to the [university's] authority over its curriculum, there lies some authority over the conduct of teachers in and out

11

of the classroom that significantly bears on the curriculum or that gives the appearance of endorsement by the university.").

"[S]peech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do." *Brammer-Hoelter*, 492 F.3d at 1203 (brackets and internal quotation marks omitted). "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting in his or her professional capacity." *Id.* (internal quotation marks omitted). During the summary judgment proceedings, Reyes admitted that, at the very least, he discussed his religious beliefs "in the context of questions and inquiries from other . . . employees," including "fellow officers *and trainees*." Aplt. App., Vol. 2 at 496 (emphasis added). Answering trainees' questions and advising them on behavior was generally consistent with the activities Reyes was paid to do as an instructor and FTO. On this record, it was not error for the district court to conclude that even if Reyes ostensibly was speaking informally, in his conversations with trainees, he was speaking in his capacity as an employee rather than a citizen.

Because Reyes' speech was made pursuant to his official duties, it did not enjoy the protection of the First Amendment, *see Garcetti*, 547 U.S. at 421-22, and the City did not violate his right to free speech by disciplining him. We therefore affirm the grant of summary judgment on Reyes' § 1983 retaliation claim.

## B.    Pat's Claim

The district court assumed the truth of Pat's averment that he had engaged in private religious conversations in the workplace, outside of his official duties. The

court then skipped to the fourth and fifth *Garcetti/Pickering* elements.  Regarding the fourth element, the court held that Pat failed to show his speech was a motivating factor in Hebbe's decisions not to promote him to lieutenant and not to extend his assignment at the academy.  Further, relying on the fifth element, the court held that the City showed that Hebbe would have made the same decisions in the absence of Pat's speech.  We need not consider the fourth element because the district court did not err in granting summary judgment based on the fifth element.

"At the fifth step . . . the burden [] shifts to the defendant, who must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity."  *Trant*, 754 F.3d at 1167 (internal quotation marks omitted).  "Summary judgment is appropriate on the fifth step when any reasonable jury would have found that [the Defendants would have taken the same action] even absent any desire on the Defendants' part to punish [the plaintiff] in retaliation for his allegedly protected speech."  *Id.* (brackets and internal quotation marks omitted).

Hebbe made the promotion decision.  But as the district court noted, the interview process involved evaluation by two panels, one a mixed panel including both community members and departmental leaders and the other a peer panel.  The panels asked the candidates the same questions and then scored them.  The scores were tallied and the candidates ranked.  Both the mixed panel and the peer panel rated the successful candidates higher than Pat.  When totaled, the rankings placed Pat sixth out of seven candidates.

13

Pat argues that notwithstanding the panels' rankings, he possessed superior

qualifications based on the baseline qualifications of education, experience, and

tenure.  He asserts that the district court erred in relying on the rankings because

"[t]he record evidence supports the inference that Pat's superior qualifications were

not considered in light of Hebbe's views touching upon Pat's religious beliefs."

Aplt. Opening Br. at 36.  But Pat has not shown that the members of the panels knew

about his religious speech or had any desire to retaliate against him.  And yet both

panels rated him lower than the successful candidates.  In light of this evidence, any

reasonable jury would find that Hebbe would not have promoted Pat in 2017 even

absent any desire to punish him for his religious speech.  *Cf. Couch v. Bd. of Trs.*,

587 F.3d 1223, 1243 (10th Cir. 2009) (recognizing that an employer's

implementation of "recommendations of an independent outside reviewer undermines

any inference that the action was motivated by retaliation").

Hebbe also made the decision not to extend Pat's assignment to oversee the

academy.  The district court identified several incidents that Hebbe cited as examples

of why he was dissatisfied with Pat's performance in that position.  Pat states that the

incidents are disputed, but he has not adequately controverted them.[4]  In these

---

[4] Pat discusses one incident, a sexual relationship between an academy employee and an underage female student.  Pat's belief that "he was not responsible for the incident" because it "occurred outside the workplace," Aplt. Reply Br. at 24, does not controvert Hebbe's belief that the incident was a "significant liability," Aplt. App., Vol. 3 at 690-91.  Pat further states that he was "unaware" of another incident, but he does not allege that the incident never occurred.  Aplt. Reply Br. at 24.  He does not address the two other matters the district court identified.

14

circumstances, any reasonable jury would find that Hebbe would not have extended Pat's term as director for an additional year even absent any desire to punish him for his religious speech.

For these reasons, we affirm the grant of summary judgment to the City on Pat's § 1983 retaliation claim.

## III.    Title VII and NMHRA Claims

The district court concurrently analyzed Reyes' Title VII and NMHRA discrimination and retaliation claims using the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *see also Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990) (adopting *McDonnell Douglas* methodology for NMHRA cases). It assumed that Reyes established a prima facie case of both discrimination and retaliation. It identified the City's proffered reason for disciplining Reyes—that he was inappropriately teaching his personal ethics and beliefs, offending some trainees and cadets—as a legitimate, non-discriminatory and non-retaliatory reason. It then held that Reyes failed to muster sufficient evidence to allow a reasonable factfinder to conclude that the City's expressed reasons were pretext for discrimination or retaliation. Even if the City was wrong in its conclusion about Reyes' behavior, the district court concluded, nothing in the record showed that it did not honestly believe the results of the IA investigation.

"[T]o support an inference of pretext, a plaintiff must come forward with evidence that the employer didn't really believe its proffered reasons for action and

thus may have been pursuing a hidden discriminatory agenda." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (ellipses and internal quotation marks omitted). "When reviewing a plaintiff's contention of pretext, we examine the facts as they appear to the person making the decision . . . ." *Id.* (internal quotation marks omitted). "[O]ur role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Id.* (brackets and internal quotation marks omitted).

Relying on the same evidence discussed in connection with his § 1983 claim against the City, Reyes argues that he presented sufficient evidence to establish pretext.[5] He takes issue with defendants' proffered facts, but as stated above, we are not persuaded that he adequately controverted material facts. For substantially the reasons the district court discussed, Reyes failed to create a genuine issue of material fact regarding the honest belief of the City's decisionmakers in Veith's investigation report and his conclusion that Reyes acted inappropriately.

Because Reyes failed to establish pretext, we affirm the grant of summary judgment on his Title VII and NMHRA claims.

---

[5] Reyes attempts to "add[] the pretext evidence disputed through the Statement of Disputed Material Facts of his district court Response Brief." Aplt. Opening Br. at 39. But because we do not allow incorporation by reference of district-court filings, we deem that portion of the argument waived. *See Fulgham v. Embarq Corp.*, 785 F.3d 395, 410 (10th Cir. 2015). Similarly, we disapprove of the City's assertions with regard to the § 1983 claims that arguments regarding the facts were "fully briefed below and the City will not burden the record with re-argument." Aplee. Resp. Br. at 20, 21.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge