Justice Thomas
delivered the opinion of the Court.
This case requires us to decide whether two federal law enforcement agents are immune from suit for allegedly arresting a suspect in retaliation for his political speech, when the agents had probable cause to arrest the suspect for committing a federal crime.
I
On June 16, 2006, Vice President Richard Cheney visited a shopping mall in Beaver Creek, Colorado. A Secret Service protective detail accompanied the Vice President. Petitioners Gus Reichle and Dan Doyle were members of that detail.
Respondent Steven Howards was also at the mall. He was. engaged in a cell phone conversation when he noticed the Vice President greeting members of the public. Agent Doyle overheard Howards say, during this conversation, “ ‘I’m going to ask [the Vice President] how many kids he’s killed today.’” Brief for Petitioners 4. Agent Doyle told two other agents what he had heard, and the three of them began monitoring Howards more closely.
Agent Doyle watched Howards enter the line to meet the Vice President. When Howards approached the Vice Presi *661 dent, he told him that his “ ‘policies in Iraq are disgusting.’ ” Ibid. The Vice President simply thanked Howards and moved along, but Howards touched the Vice President’s shoulder as the Vice President departed.[1] Howards then walked away.
Several agents observed Howards’ encounter with the Vice President. The agents determined that Agent Reichle, who coordinated the protective intelligence team responsible for interviewing individuals suspected of violating the law, should question Howards. Agent Reichle had not personally heard Howards’ comments or seen his contact with the Vice President, but Agent Doyle briefed Agent Reichle on what had happened.
Agent Reichle approached Howards, presented his badge and identified himself, and asked to speak with him. How-ards refused and attempted to walk away. At that point, Agent Reichle stepped in front of Howards and asked if he had assaulted the Vice President. Pointing his finger at Agent Reichle, Howards denied assaulting the Vice President and told Agent Reichle, “if you don’t want other people sharing their opinions, you should have him [the Vice President] avoid public places.” Howards v. McLaughlin, 634 F. 3d 1131,1137 (CA10 2011) (internal quotation marks omitted). During this exchange, Agent Reichle also asked How-ards whether he had touched the Vice President. Howards falsely denied doing so. After confirming that Agent Doyle had indeed seen Howards touch the Vice President, Reichle arrested Howards.
The Secret Service transferred Howards to the custody of the local sheriff’s department. Howards was' charged by local officials with harassment in violation of state law. The charge was eventually dismissed.
*662 I — i H-1
Howards brought this action in the United States District Court for the District of Colorado under Rev. Stat. § 1979, 42 U. S. C. § 1983, and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388 (1971).[2] Howards alleged that he was arrested and searched without probable cause, in violation of the Fourth Amendment. Howards also alleged that he was arrested in retaliation for criticizing the Vice President, in violation of the First Amendment.
Petitioners Reichle and Doyle moved for summary judgment on the ground that they were entitled to qualified immunity. The District Court denied the motion. See App. to Pet. for Cert. 46-61. On interlocutory appeal, a divided panel of the United States Court of Appeals for the Tenth Circuit affirmed in part and reversed in part. 634 F. 3d 1131.
The Court of Appeals held that petitioners enjoyed qualified immunity with respect to Howards’ Fourth Amendment claim. The court concluded that petitioners had probable cause to arrest Howards for making a materially false statement to a federal official in violation of 18 U. S. C. § 1001 because he falsely denied touching the Vice President. 634 F. 3d, at 1142. Thus, the court concluded that neither How-ards’ arrest nor search incident to the arrest violated the Fourth Amendment.[3] Id., at 1142-1143.
However, the Court of Appeals denied petitioners qualified immunity from Howards’ First Amendment claim. The court first determined that Howards had established a material factual dispute regarding whether petitioners were substantially motivated by Howards’ speech when they arrested *663 him. Id., at 1144-1145. The court then rejected petitioners’ argument that, under this Court’s decision in Hartman v. Moore, 547 U. S. 250 (2006), probable cause to arrest defeats a First Amendment claim of retaliatory arrest. The court concluded that Hartman established such a rule only for retaliatory prosecution claims and, therefore, did not upset prior Tenth Circuit precedent clearly establishing that a retaliatory arrest violates the First Amendment even if supported by probable cause. 634 F. 3d, at 1148.
Judge Paul Kelly dissented from the court’s denial of qualified immunity. He would have held that when Howards was arrested, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. In Judge Kelly’s view, Hartman called into serious question the Tenth Circuit’s prior precedent on retaliatory arrests. 634 F. 3d, at 1151. He noted that other Circuits had applied Hartman to retaliatory arrests and that there was a “strong argument” in favor of doing so. 634 F. 3d, at 1151-1152.
We granted certiorari on two questions: whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest, and whether clearly established law at the time of Howards’ arrest so held. See 565 U. S. 1078 (2011). If the answer to either question is “no,” then the agents are entitled to qualified immunity. We elect to address only the second question. We conclude that, at the time of Howards’ arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. We, therefore, reverse the judgment of the Court of Appeals denying petitioners qualified immunity.[4]
*664 III
Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. See Ashcroft v. al-Kidd, 563 U. S. 731, 735 (2011). In Pearson v. Callahan, 555 U. S. 223, 236 (2009), we held that courts may grant qualified immunity on the ground that a purported right was not “clearly established” by prior case law, without resolving the often more difficult question whether the purported right exists at all. Id., at 227. This approach comports with our usual reluctance to decide constitutional questions unnecessarily. Id., at 241; see also Camreta v. Greene, 563 U. S. 692, 705-706 (2011); al-Kidd, 563 U. S., at 735.
To be clearly established, a right must be sufficiently, clear “that every 'reasonable official would-[have understood] that what he is doing violates that right/ ” Id., at 741 (quoting Anderson v. Creighton, 483 U. S. 635, 640 (1987)). In other words, “existing precedent must have placed the statutory or constitutional question beyond debate.” al-Kidd, supra, at 741. This “clearly established” standard protects the balance between vindication of constitutional rights and government officials’ effective performance of their duties by ensuring that officials can “ ‘reasonably . . . anticipate when their conduct may give rise to liability for damages.’ ” Anderson, supra, at 639 (quoting Davis v. Scherer, 468 U. S. 183, 195 (1984)).
The “clearly established” standard is not satisfied here. This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by *665 probable cause; nor was such a right otherwise clearly established at the time of Howards’ arrest.
A
■ ■ Howards contends that our cases have “ ‘settled’ ” the rule that, “ ‘as a general matterf,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions’ ” for his speech. See Brief for Respondent 39 (quoting Hartman, supra, at 256). But we have previously explained that the right allegedly violated must be established, “ ‘not as a broad general proposition,’ ” Brosseau v. Haugen, 543 U. S. 194, 198 (2004) (per curiam), but in a “particularized” sense so that the “contours” of the right are clear to a reasonable official, Anderson, supra, at 640. Here, the right in question is not the general right to be free from retaliation for one’s speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause. This Court has never held that there is such a right.[5]
B
We next consider Tenth Circuit precedent. Assuming, arguendo, that controlling Court of Appeals’ authority could be a dispositive source of clearly established law in the cir *666 cumstances of this case, the Tenth Circuit’s cases do not satisfy the “clearly established” standard here.
Relying on DeLoach v. Bevers, 922 F. 2d 618 (1990), and Poole v. County of Otero, 271 F. 3d 955 (2001), the Court of Appeals concluded that, at the time of Howards’ arrest, its precedent had clearly established the unlawfulness of an arrest in retaliation for the exercise of First Amendment rights, irrespective of probable cause. In DeLoach, a case involving both a retaliatory arrest and a retaliatory prosecution, the court held that “[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.” 922 F. 2d, at 620 (internal quotation marks omitted). In Poole, a subsequent retaliatory prosecution case, the court relied on DeLoach for the proposition that a plaintiff’s illegal conduct is “not relevant to his First Amendment claim.” 271 F. 3d, at 961.
The Court of Appeals acknowledged that Poole was abrogated by this Court’s subsequent decision in Hartman v. Moore, 547 U. S. 250, which held that a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause. But the Court of Appeals determined that Hartman’s no-probable-cause requirement did not extend to claims of retaliatory arrest and therefore did not disturb its prior precedent in DeLoach. Accordingly, the court concluded, “when Mr. Howards was arrested it was clearly established that an arrest made in retaliation of an individual’s First Amendment rights is unlawful, even if the arrest is supported by probable cause.” 634 F. 3d, at 1148.
We disagree. At the time of Howards’ arrest, Hartman’s impact on the Tenth Circuit’s precedent governing retaliatory arrests was far from clear. Although the facts of Hartman involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of Hartman also applied to arrests.
*667 Hartman was decided against a legal backdrop that treated retaliatory arrest and prosecution claims similarly. Hartman resolved a split among the Courts of Appeals about the relevance of probable cause in retaliatory prosecution suits, but some of the conflicting Court of Appeals cases involved both an arrest and a prosecution that were alleged to be retaliation for the exercise of First Amendment rights. See 547 U. S., at 255-256, 259, n. 6 (citing Mozzochi v. Borden, 959 F. 2d 1174 (CA2 1992); Singer v. Fulton Cty. Sheriff, 63 F. 3d 110 (CA2 1995); Keenan v. Tejeda, 290 F. 3d 252 (CA5 2002); Wood v. Kesler, 323 F. 3d 872 (CA11 2003)). Those cases made no distinction between claims of retaliatory arrest and claims of retaliatory prosecution when considering the relevance of probable cause. See Mozzochi, supra, at 1179-1180; Singer, supra, at 120; Keenan, supra, at 260; Wood, supra, at 883. Indeed, the close relationship between retaliatory arrest and prosecution claims is well demonstrated by the Tenth Circuit’s own decision in DeLoach. DeLoach, too, involved allegations of both retaliatory arrest and retaliatory prosecution, and the Tenth Circuit analyzed the two claims as one. 922 F. 2d, at 620-621.
A reasonable official also could have interpreted Hartman's rationale to apply to retaliatory arrests. Hartman first observed that, in retaliatory prosecution cases, evidence showing whether there was probable cause for the charges would always be “available and apt to prove or disprove retaliatory causation.” 547 U. S., at 261. In this Court’s view, the presence of probable cause, while not a “guarantee” that retaliatory motive did not cause the prosecution, still precluded any prima facie inference that retaliatory motive was the but-for cause of the plaintiff’s injury. Id., at 265. This was especially true because, as Hartman next emphasized, retaliatory prosecution claims involve particularly attenuated causation between the defendant’s alleged retaliatory animus and the plaintiff’s injury. Id., at 259-261. In *668 a retaliatory prosecution case, the key defendant is typically not the prosecutor who made the charging decision that injured the plaintiff, because prosecutors enjoy absolute immunity for their decisions to prosecute. Rather, the key defendant is the person who allegedly prompted the prosecutor’s decision. Thus, the intervening decision of the third-party prosecutor widens the causal gap between the defendant’s animus and the plaintiff’s injury. Id., at 261-263.
Like retaliatory prosecution cases, evidence of the presence or absence of probable cause for the arrest will be available in virtually every retaliatory arrest case. Such evidence could be thought similarly fatal to a plaintiff’s claim that animus caused his arrest, given that retaliatory arrest cases also present a tenuous causal connection between the defendant’s alleged animus and the plaintiff’s injury. An officer might bear animus toward the content of a suspect’s speech. But the officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat. See, e. g., Wayte v. United States, 470 U. S. 598, 612-613 (1985) (noting that letters of protest writ- , ten to the Selective Service, in which the author expressed disagreement with the draft, “provided strong, perhaps conclusive evidence of the nonregistrant’s intent not to comply — one of the elements of the offense” of willful failure to register for the draft). Like retaliatory prosecution cases, then, the connection between alleged animus and injury may be weakened in the arrest context by a police officer’s wholly legitimate consideration of speech.
To be sure, we do not suggest that Hartman’s rule in fact extends to arrests. Nor do we suggest that every aspect of Hartman’s rationale could apply to retaliatory arrests. Hartman concluded that the causal connection in retaliatory prosecution cases is attenuated because those cases necessarily involve the animus of one person and the injurious action of another, 547 U. S., at 262, but in many retaliatory arrest *669 cases, it is the officer bearing the alleged animus who makes the injurious arrest. Moreover, Hartman noted that, in retaliatory prosecution cases, the causal connection between the defendant’s animus and the prosecutor’s decision is further weakened by the, “presumption of regularity accorded to prosecutorial decisionmaking.” Id., at 263. That presumption does hot apply here. Nonetheless, the fact remains that, for qualified immunity purposes, at the time of Howards’ arrest it was at least arguable that Hartman’s rule extended to retaliatory arrests.[6]
Decisions from other Federal Courts of Appeals in the wake of Hartman support this assessment. Shortly before Howards’ arrest, the Sixth Circuit held that Hartman required a plaintiff alleging a retaliatory arrest to show that the defendant officer lacked probable cause. See Barnes v. Wright, 449 F. 3d 709, 720 (2006) (reasoning that the Hartman “rule sweeps broadly”). That court’s treatment of Hartman confirms that the inapplicability of Hartman to arrests would not have been clear to a reasonable officer when Howards was arrested. Moreover, since Howards’ arrest, additional Courts of Appeals have concluded that Hartman’s no-probable-cause requirement extends to retaliatory arrests. See, e. g., MeCabe v. Parker, 608 F. 3d 1068, 1075 (CA8 2010); Phillips v. Irvin, 222 Fed. Appx. 928, 929 (CA11 2007) (per curiam). As we have previously observed, “[i]f *670 judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.” Wilson v. Layne, 526 U. S. 603, 618 (1999).[7]
* * *
Hartman injected uncertainty into the law governing retaliatory arrests, particularly in light of Hartman’s rationale and the close relationship between retaliatory arrest and prosecution claims. This uncertainty was only confirmed by subsequent appellate decisions that disagreed over whether the reasoning in Hartman applied similarly to retaliatory arrests. Accordingly, when Howards was arrested it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation. Petitioners Reichle and Doyle are thus entitled to qualified immunity.
The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Kagan took no part in the consideration or decision of this case.

 The parties dispute the manner of the touch. Howards described it as an openhanded pat, while several Secret Service agents described it as a forceful push. This dispute does not affect our analysis.

 Howards named several Secret Service agents as defendants, but only Agents Reichle and Doyle are petitioners here. We address only those parts of the lower courts’ decisions that involve petitioners Reichle and Doyle.

 Howards does not challenge the Court of Appeals’ probable-cause determination.

 This Court has recognized an implied cause of action for damages against federal officials for Fourth Amendment violations. See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388 (1971). We have never held that Bivens extends to First Amendment claims. See Ashcroft v. Iqbal, 556 U. S. 662, 675 (2009) (assuming without deciding that a *664 First Amendment free exercise claim is actionable under Bivens); Bush v. Lucas, 462 U. S. 367, 368 (1983) (refusing to extend Bivens to a First Amendment speech claim involving federal employment). We need not (and do not) decide here whether Bivens extends to First Amendment retaliatory arrest claims.

 The Court of Appeals’ reliance on Whren v. United States, 517 U. S. 806 (1996), was misplaced. There, we held that a traffic stop supported by probable cause did not violate the Fourth Amendment regardless of the officer’s actual motivations, but we explained that the Equal Protection Clause would prohibit an officer from selectively enforcing the traffic laws based on race. Id., at 813. Citing Whren, the Court of Appeals noted that “[i]t is well established that an act which is lawful under the Fourth Amendment may still violate other provisions of the Constitution.” Howards v. McLaughlin, 634 F. 3d 1131, 1149, n. 15 (CA10 2011). But, again, we do not define clearly established law at such a “high level of generality.” Ashcroft v. al-Kidd, 563 U. S. 731, 742 (2011). Whren’s discussion of the Fourteenth Amendment does not indicate, much less “clearly establish,” that an arrest supported by probable cause could none-, theless violate the First Amendment.

 Howards argues that petitioners violated his clearly established First Amendment right even if Hartman’s rule applies equally to retaliatory arrests. According to Howards, Hartman did not hold that a prosecution violates the First Amendment only when it is unsupported by probable cause. Rather, Howards argues, Hartman made probable cause relevant only to a plaintiff’s ability to recover damages for a First Amendment violation. See Brief for Respondent 37-41. We need not resolve whether Hartman is best read as defining the scope of the First Amendment right or as simply establishing a prerequisite for recovery. Nor need we decide whether that distinction matters. It suffices, for qualified immunity purposes, that the answer would not have been clear to a reasonable official when Howards was arrested.

 Indeed, the Tenth Circuit itself has applied Hartman outside the context of retaliatory prosecution. See McBeth v. Himes, 698 F. 3d 708, 719 (2010) (requiring the absence of probable cause in the context of a claim alleging that government officials suspended a business license in retaliation for the exercise of First Amendment rights).