In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 15-2704

JULIAN T. NETTLES-BEY,

*Plaintiff-Appellee,*

*v.*

PHILIP WILLIAMS and BRODERICK BURKE,

*Defendants-Appellants.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 8022 — **Joan B. Gottschall**, *Judge.*

———————

ARGUED MARCH 29, 2016 — DECIDED APRIL 14, 2016

———————

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Adherents to the Moorish Science Temple change their surnames to include "-Bey" or "-El". Julian Nettles-Bey was born with that surname and does not hold Moorish beliefs. He contends in this suit under 42 U.S.C. §1983 that two police officers in South Holland, Illinois, assumed from his name that he is a Moor and on that account arrested him for trespassing, when they would not have arrested a Christian or an atheist. He maintains that of-

ficial action based on a belief (accurate or not) about a person's religion violates the Free Exercise Clause of the First Amendment, applied to the states through the Equal Protection Clause of the Fourteenth Amendment. The district court denied the arresting officers' motion for summary judgment, see 2015 U.S. Dist. LEXIS 101995 (N.D. Ill. Aug. 4, 2015), and they immediately appealed.

The case is still live in the district court, while 28 U.S.C. §1291 requires litigants to wait for final decisions before appealing. The Supreme Court held in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), that an order rejecting a defense of qualified immunity is final in the sense that it conclusively rejects a defendant's claim of a right not to be tried, and the arresting officers have invoked this principle. But the Supreme Court has also held that an appeal under *Mitchell* is limited to a contention that doubt about legal doctrine forecloses an award of damages. The idea behind qualified immunity is that public employees who act in the shadow of legal uncertainty should not be required to pay damages if judges later resolve that uncertainty against the public actors. See, e.g., *Reichle v. Howards*, 132 S. Ct. 2088 (2012). But when the argument concerns what the record shows about the facts, rather than whether legal uncertainty dogs public officials who try to cope with particular situations, the appeal must await the fully final decision. *Johnson v. Jones*, 515 U.S. 304 (1995). Debates about material facts must be resolved at trial, for public officials no less than other litigants.

The district judge thought that this suit presents a triable issue not because of any doubt about the law—the judge deemed it clearly established that an officer may not arrest someone believed to hold one set of religious beliefs, when

in otherwise-identical circumstances the officer would not have arrested a person holding a different set of beliefs—but because of doubt about what reasonable jurors would infer about why the officers acted as they did.

Nettles-Bey, who lives in Knoxville, travels around the country to assist African-American youths. He usually stays with the people who invite him to come. Sabeel El-Bey invited Nettles-Bey to South Holland and offered accommodations in what El-Bey described as his house, at 84 Woodland Drive. El-Bey gave Nettles-Bey a garage-door opener and told him to use the door between house and garage. Nettles-Bey took the invitation and found Felicia Mohammad, whom he had already met, staying in the house.

What Nettles-Bey did not know is that El-Bey was lying. He was a squatter at 84 Woodland Drive and had no lawful interest in the house. Adolph Clark, the owner of the property, does not live there, but he happened to stop by while Nettles-Bey was present and called the police, reporting the trespass. On arriving, officers Williams and Burke discovered not only Nettles-Bey's name but also some literature referring to Moorish Science.

Here is where stories, and potential inferences, diverge. The officers contend that they take into custody anyone who is the subject of a trespass complaint, so they arrested Nettles-Bey as a matter of routine when he could not show any ownership interest or an invitation by Clark—neither of which Nettles-Bey has ever claimed to have. For his part, Nettles-Bey says that the arresting officers, and others at the stationhouse, remarked on his status as a Moor (ignoring his denials) and congratulated themselves on rounding up another member of that troublesome sect, which they strongly

implied they were trying to drive out of South Holland. The subject of Nettles-Bey's religious beliefs, and Moors' insouciance toward property rights, also came up at his trial for criminal trespass, injected by the arresting officers. (Nettles-Bey was acquitted, but that does not affect, one way or another, the constitutional propriety of his arrest. See *Wallace v. Kato*, 549 U.S. 384 (2007).) The district court's opinion adds many additional details.

After canvassing the evidence that would be admissible at a civil trial, the district court concluded that a reasonable jury could rule either for, or against, Nettles-Bey on the central issue: Whether the arresting officers would have arrested him had they believed him to be a Christian or otherwise not to hold Moorish beliefs. If the answer is yes, the district court concluded, then the officers did not violate the Constitution (for they had probable cause to believe that Nettles-Bey was trespassing); but if the answer is no, then the officers violated his clearly established rights under the First Amendment. That's why the court denied defendants' motion for summary judgment—though it did end the case against the Village, which does not have a policy of treating Moors worse than other faiths.

In contesting this ruling on appeal, the officers do not contend that there is an open issue of constitutional law about whether public officials may hold a person's religion against him when deciding whether to make an arrest. Nor do they contend that there is an unsettled issue about whether making an *error* in determining a person's religion permits an arrest, even though acting on the basis of correct information would be forbidden. Cf. *Heffernan v. Paterson*, No. 14–1280 (argued in the Supreme Court on January 19

and posing the question whether a demotion because of a person's incorrectly perceived political beliefs violates the First Amendment). What they maintain is that the district judge misunderstood the facts. They insist that there is no material dispute about their reasons for arresting Nettles-Bey—that any reasonable juror would have to find that they acted on Clark's complaint, and for that reason alone.

Appellants' brief makes it clear that they think that the district judge got the facts wrong. Their summary of argument tells us: "[T]he record is devoid of evidence to support the inference that religious discrimination led to Plaintiff's arrest and detention". The first caption in the argument section of their brief begins: "The district court erred in concluding that a triable fact issue existed as to whether the Defendant officers were motivated by discriminatory animus toward Moors". From beginning to end, appellants' brief is about what the record shows and what inferences a reasonable juror could draw. That's the domain of *Johnson*; appellants' line of argument has nothing to do with uncertainty in federal law.

Appellants' reply brief tells us that *Johnson* is irrelevant. They observe that whether to grant summary judgment is a question of law, at least in the sense that a district judge does not make any findings of fact (but must take matters in the light most favorable to the party opposing the motion) and that a court of appeals decides without deferring to the district court's view. They add that immunity likewise is about questions of law. It follows, they believe, that they are entitled to contend in a pre-trial qualified-immunity appeal that the district judge erred in evaluating the record and that, as a matter of law, they are entitled to immediate decision in

their favor. If that is right, however, then *Johnson* itself is wrong.

The question posed by the Supreme Court for qualified-immunity appeals is whether legal uncertainty affected the *primary conduct* of which the defendants are accused. That's the qualified-immunity issue: Whether it is clearly established that federal law (statutory or constitutional) forbade the public employees to act as they did. *Johnson* holds that, when addressing this question about the propriety of the defendants' behavior, the court of appeals must accept as given the district court's reading of the record. If the district judge concludes that a reasonable jury could resolve a particular factual dispute in the plaintiff's favor, the court of appeals must address the question about legal uncertainty on that understanding.

Appellants insist that *Scott v. Harris*, 550 U.S. 372 (2007), and *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014), modify the approach of *Johnson* and entitle them to contest the district court's factual understanding. Whether, and if so how far, that may be true when there is *also* a dispute about the nature of and uncertainty in the federal legal principles that govern the public officials' primary conduct is an interesting question, which this court may address in *Stinson v. Gauger*, No. 13-3343 (7th Cir. argued en banc Feb. 9, 2016). Neither *Scott* nor *Plumhoff* allows an appeal whose *sole* goal is to upset how the district judge understood the record. We have nothing more to say about *Scott* and *Plumhoff*, because there is no uncertainty at all about the rules of federal law that govern the question whether police may hold a person's religion against him when deciding whether to make an arrest.

That they cannot has been established for a long, long time—
and appellants do not argue otherwise.

They do say that there is uncertainty about a different is-
sue that they call a dispute of law: Whether standing orders
to police in South Holland require an arrest for criminal
trespass whenever the owner demands. This is not a dispute
about federal law—and it does not concern "law" at all.
There is a factual dispute about whether Clark *did* demand
Nettles-Bey's arrest, and a further dispute about whether of-
ficers in South Holland are obliged to honor the owner's
wishes in the face of exculpatory information such as Net-
tles-Bey's contention that he was present at the invitation of
someone he honestly (and reasonably) thought to be the
owner. The chief of police himself testified by deposition
that officers have discretion. These are among the issues that
may be explored at the impending trial.

The appeal is dismissed for want of jurisdiction.