NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JUL 26 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RUTH ANN CONDE CHEESMAN; ROY D. CHEESMAN, | No. 23-35310 |
| Plaintiffs-Appellees, | D.C. No. 1:18-cv-03013-SAB |
| v. | MEMORANDUM* |
| TABITHA A. SNYDER, | |
| Defendant-Appellant, | |
| and | |
| MAYRA CUENCA; PAMELA ANDERSON; BERTA NORTON; DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Children's Administration; DSHS REGION 1/DCFS CHILDRENS ADMINISTRATION; ATTORNEY GENERAL FOR THE STATE OF WASHINGTON; BOB FERGUSON, State of Washington Attorney General, | |
| Defendants. | |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted July 10, 2024
Seattle, Washington

Before:  McKEOWN, CLIFTON, and BRESS, Circuit Judges.

Ruth Ann and Roy Cheesman brought this 42 U.S.C. § 1983 suit claiming that Child Protective Services (CPS) investigator Tabitha Snyder violated their Fourteenth Amendment rights when Snyder took the Cheesmans' three children for a medical examination without parental consent or judicial authorization.  The district court held that Snyder was not entitled to absolute or qualified immunity. After the district court granted judgment as a matter of law in favor of plaintiffs on the issue of liability, a jury awarded $175,000 to the Cheesmans.  Snyder appealed. Reviewing the denial of qualified immunity de novo and construing any disputed facts in favor of plaintiffs, *see O'Doan v. Sanford*, 991 F.3d 1027, 1035, 1043 (9th Cir. 2021), we conclude that Snyder is entitled to qualified immunity.  We reverse and remand for entry of judgment in favor of Snyder.

Public employees "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Under this circuit's Fourteenth Amendment precedents, "the state is required to notify parents and to obtain judicial approval before children are subjected to

2

investigatory physical examinations" unless there is "a reasonable concern that material physical evidence might dissipate or that some urgent medical problem exists requiring immediate attention." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) (internal citation omitted). If a defendant "fails to notify 'parents about the examinations and performs the examinations without obtaining either the parents' consent or judicial authorization,' the [defendant] . . . 'violates parents' Fourteenth Amendment substantive due process rights.'" *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1150 (9th Cir. 2021) (brackets omitted) (quoting *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1160–61 (9th Cir. 2018)).

We have discretion to resolve this case on the clearly established prong of the qualified immunity analysis. *See O'Doan*, 991 F.3d at 1036. "To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle*, 566 U.S. at 664 (brackets and internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 583 U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiffs primarily rely on *Wallis*, but *Wallis* involved facts very different from this case. In *Wallis*, officers seized two children, ages two and five, after "a

3

mental patient who had a long history of delusional disorders and was confined to a mental institution told her therapist a fantastic tale of Satanic witchcraft within her family and an impending child sacrifice." 202 F.3d at 1131. When police arrived at the family's house, there was no evidence of "anything suspicious," and the children appeared unharmed and denied they had been abused. *Id.* at 1134. Nonetheless, the children were taken away in the middle of the night, placed in a county institution for days, and then subjected to invasive examinations. *Id.* at 1134–35. In these circumstances, we held that a constitutional violation occurs when children are taken for a medical examination without parental notification or judicial authorization. *Id.* at 1141. We did not identify facts that would have supported a reasonable concern of an urgent medical problem or dissipating evidence at the time of the medical examination.

Plaintiffs also point to *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), *vacated in part*, 563 U.S. 692 (2011). In *Greene*, we held that a mother's constitutional rights were violated when she was ordered to leave the premises while her daughter underwent a genital examination following allegations of sexual abuse. *Id.* at 1019. In that case, it was clear that allowing the mother (who was already waiting outside the medical examination room) to remain in the waiting room would not interfere with the collection of evidence or treatment of urgent medical problems. *Id.* Finally, plaintiffs cite *Benavidez*, 993 F.3d 1134, and *Mann*, 907 F.3d 1154, but

4

those cases were decided after the events in question and could not put Snyder on notice of the alleged unconstitutionality of her actions. *See Kisela v. Hughes*, 584 U.S. 100, 107 (2018). In any event, those cases involved facts very different from this case.

Neither *Wallis*, *Greene*, nor any other precedent clearly established that Snyder's "conduct was unlawful in the situation [s]he confronted." *Wesby*, 583 U.S. at 63. Snyder took the children for immediate medical examinations based on evidence of physical injury and recent physical abuse. Five-year-old L.C. showed up to school with puffiness, bruising, and a red linear mark on her eye, and she stated that her father caused the injury by hitting her in the head. L.C. also stated that her father hit her sister V.C. when V.C. tried to get ice for L.C. Siblings V.C. and I.C. likewise told police that their father regularly hit them, with V.C. reporting that she had been hit the night before. V.C. stated that she was scared to go home and that she might get hit if she spoke to the police about her father.

Based on L.C.'s visible injury and the children's reports of physical abuse, Snyder determined that a prompt medical examination was necessary because she was concerned there might be an urgent medical problem or dissipating evidence of internal injuries. No clearly established law demonstrated that every reasonable official in Snyder's circumstances would understand that what she was doing was

unlawful.  *See id.*[1]

We reverse and remand for the entry of judgment in favor of Snyder and for any further proceedings consistent with this decision.

**REVERSED AND REMANDED.**

---

[1] As our analysis indicates, we disagree with the district court's determination that evidence that Roy Cheesman allegedly abused the children was not relevant to the question of whether Snyder violated the Cheesmans' constitutional rights.  Because we resolve this case on qualified immunity grounds, we do not address the other issues raised on appeal.