COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Malveaux and Duffan
Argued at Richmond, Virginia


SEAN LOHR

                                      MEMORANDUM OPINION[*] BY
v.        Record No. 0389-25-2          JUDGE MARY BENNETT MALVEAUX
                                         MARCH 24, 2026

BOARD OF VISITORS OF VIRGINIA
  POLYTECHNIC INSTITUTE AND STATE
  UNIVERSITY, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Andrew T. Bodoh (Thomas H. Roberts & Associates, P.C., on
briefs), for appellant.

M. Hudson McClanahan, Associate University Legal Counsel and
Special Assistant Attorney General (Kay Kurtz Heidbreder,
University Legal Counsel and Special Assistant Attorney General, on
brief), for appellees.

Sean Lohr appeals from an order sustaining the plea in bar of the Board of Visitors of

Virginia Polytechnic Institute and State University ("BOV") and Rachael Tully and dismissing

Lohr's claims with prejudice.  Lohr contends the circuit court erred in: ruling that his complaint

did not adequately identify members of the BOV as defendants in their official capacities;

receiving exhibits omitted from his complaint; ruling he did not adequately plead a First

Amendment retaliation claim against Tully; finding that Tully enjoyed qualified immunity from

his claim against her; and ruling that Tully was entitled to absolute immunity.  For the reasons

that follow, we affirm the circuit court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. BACKGROUND

### A. The "Shirtless Boys"

Lohr was a student at Virginia Polytechnic Institute and State University ("Virginia Tech" or the "university") during the 2021-22 school year. During that time, he regularly participated in the activities of the "Shirtless Boys," a group of male students who supported the university's women's soccer team during their matches. The Shirtless Boys would cheer for the Virginia Tech players and encourage other spectators to cheer for them.

Beginning in August 2021, Virginia Tech's Senior Associate Athletics Director, Reyna Gilbert-Lowry, repeatedly complained to Lohr about the Shirtless Boys' conduct. She also told Lohr she had received multiple complaints from parents regarding the Shirtless Boys' behavior. During a match in late August, Gilbert-Lowry confronted the Shirtless Boys and told them to "stop what they were doing," although she did not specify what particular conduct she found objectionable. Following this incident, Lohr requested information from the university's athletic director and the team's coach regarding any complaints lodged against the Shirtless Boys. He received no such information in response.

During a match in September 2021, Virginia Tech fans suspected that a visiting player was faking injuries to obtain penalties. The fans "expressed their dissatisfaction loudly, including with profanities." Although Lohr denies the Shirtless Boys used any profanities, Lohr was approached by Gilbert-Lowry and told to "tone it down." When Lohr asked Gilbert-Lowry why she "did not respect the Shirtless Boys," she summoned university security. Lohr then began running back and forth across the landing at the front of the bleachers to "rally the crowd" in support of the team. Security arrived and told the Shirtless Boys to leave. As the Shirtless Boys departed, Lohr told the crowd to "email Gilbert-Lowry's boss" and "expressed his opinion to her personally that she was a glorified PE teacher."

Lohr complained about Gilbert-Lowry's conduct to the Office of the Dean of Students. The following day, Gilbert-Lowry filed a student conduct complaint against Lohr alleging disorderly or disruptive conduct, failure to comply, and abusive conduct.

Rachael Tully, employed at that time as Virginia Tech's Assistant Director for Student Conduct, conducted a hearing on the complaint in October 2021. Soon after, she issued a "determination letter." In that letter, Tully found that Lohr was not responsible for failure to comply or abusive conduct during the September 2021 episode. But based on his "running up and down the flat landing of the bleachers" and "yell[ing] into the crowd" while being escorted out of the stadium, Tully found Lohr responsible for disorderly or disruptive conduct in violation of the university's Student Code of Conduct. Due to his misconduct, Lohr was suspended from Virginia Tech, although his suspension was deferred until graduation so long as he did not violate any university policies. Lohr's privileges to attend university athletic events were also curtailed, with the curtailment deferred unless he engaged in "behaviors similar to the one addressed during th[e] incident." Additionally, Lohr was placed under a no-contact order with respect to Gilbert-Lowry and instructed to write a "letter of acknowledgment to the community, specifically attendees of sporting events, and its members impacted by [his] actions."

B. Lohr's Complaint

Pursuant to 42 U.S.C. § 1983, Lohr filed a two-count complaint in September 2023. Lohr styled his complaint as follows:

> SEAN LOHR,
>     Plaintiff,
>
> v.
>
> BOARD OF VISITORS OF VIRGINIA
> POLYTECHNIC INSTITUTE AND STATE UNIVERSITY,
>     *Currently:*
>     Edward Baine,
>     David Calhoun,

Carrie Chenery,
Sandy Davis,
Nancy Dye,
Greta Harris,
Brad Hobbs,
William Holtzman,
Donald Horsley,
Anna James,
Letitia Long,
Chris Petersen,
John Rocovich, *and*
Jeff Veatch,
Each in his or her official capacity,

Serve:        Kay Heidbreder, University Legal Counsel
236 Burruss Hall (0121)
Blacksburg, VA 24061

and

RACHAEL TULLY,
In her individual capacity,

Serve at:      [redacted][1]

Defendants.

In the first count of his complaint, Lohr sought declaratory and injunctive relief "against the board of visitors" for alleged violations of his rights under the First Amendment of the U.S. Constitution. Specifically, he contended that the disciplinary policy under which he was sanctioned was unconstitutionally vague and overbroad and that its application against him was "unconstitutionally applied to protected, expressive activity." As relief, Lohr asked that the circuit court declare the finding that he had violated the policy "unconstitutional . . . and enter an injunction compelling the Board of Visitors to set aside the disciplinary action against [him], and expunge all associated records" from his academic and student conduct files. He repeated this

---

[1] We redact Tully's address, which appears to be her personal residence, to protect her privacy.

request for injunctive relief "ordering the Board of Visitors" to expunge his records in the prayer for relief at the conclusion of his complaint.

In Lohr's second count, he requested compensatory and punitive damages from Tully. He specifically alleged that in addition to the "First Amendment [violations] by the enforcement of the unconstitutional policy, or an unconstitutional application of the policy" against him, Tully's "decision to compel [him] to write a letter of acknowledgment" violated his First Amendment rights by seeking "to compel affirmation of a belief and an attitude of mind concerning the inappropriateness of his conduct."

In his factual recitation, Lohr referenced and included excerpts from three exhibits. Exhibit A was a copy of Tully's determination letter; Exhibit B was a copy of Tully's letter placing Lohr under a no-contact order; and Exhibit C was a copy of the university's code of conduct defining disorderly or disruptive conduct. But although Lohr referenced the contents of each exhibit in his complaint and stated that the exhibits were "attached" to his pleading, he did not include them when he filed his complaint.

Tully was served with a copy of the complaint at her listed address. The return of service for the university indicated that a single copy of the complaint was served on an attorney authorized to accept service by Heidbreder, the university's legal counsel.

Entering a special appearance, counsel for the BOV and Tully filed a plea in bar asserting various immunity defenses. Lohr filed a response in which, in addition to his previous claims against Tully of coerced speech and enforcement of an unconstitutional student conduct policy applied to him in an unconstitutional manner, he also asserted a First Amendment retaliation claim. And in a reply to Lohr's response to the plea in bar, defense counsel asserted that Lohr had failed to serve any of the members of the BOV, and thus "Virginia Tech and Rachael Tully

- 5 -

[are] the only two proper parties to this action." Counsel appended copies of Lohr's service returns to their response, as well as copies of Lohr's three exhibits.

### C. The Hearing

At a hearing on the plea in bar, Lohr argued that "with respect to [the exhibits] that we referenced in the complaint, we did intend to file them" but "inadvertently left them off." He asserted that, when opposing counsel noted this omission, Lohr contacted them and "said we'd consider to file a motion to correct the deficiency." But once the defendants filed their plea in bar, Lohr stated, he was "concern[ed] . . . that by submitt[ing] additional documents you convert the standard of review for the plea in bar from one of a demurrer styled review into one of an evidentiary style review." Lohr therefore did not file a motion to submit the exhibits, instead "standing on the complaint as we had filed it so that there was not any confusion about the appropriate standard of review."

Defense counsel argued that because the exhibits were referenced in Lohr's complaint, he had "made them a part of his complaint." And since Lohr had "as much [as] told the Court that he does not plan to submit them," defense counsel sought leave "to submit those documents, A, B and C . . . . I think [Lohr's] stuck with them. They are part of the complaint by law." When the circuit court asked Lohr why defense counsel should not be permitted to submit the three exhibits, Lohr replied that he had "no concern with the Court ultimately seeing it that way. What I do have a concern with is the Court understanding what is the appropriate standard of review for this plea in bar." If the exhibits constituted "new evidence being submitted under a plea in bar," Lohr contended, that would "convert[] the standard of review into a evidentiary analysis." Accordingly, Lohr's "concern [was] not with the Court seeing the documents," but with "clarity in concerning the appropriate standard of review." The circuit court granted defense counsel's motion and received the documents.

On the issue of the parties to Lohr's suit, defense counsel entered a general appearance as to Tully but maintained he was making only a special appearance on behalf of the BOV members as individuals. Counsel noted that service of Lohr's complaint had only been on the BOV as an entity, and although the board members were "listed as defendants" in the caption to the complaint, "they've never been served." And because "the board is the university" and "[t]he board is not a person," Lohr's action pursuant to 42 U.S.C. § 1983 "cannot proceed."

In response, Lohr argued that his complaint made "clear and unambiguous" that he was suing the BOV members "each in his or her [official] capacity" because "[t]hat's how it's listed in the -- listed in the caption." He contended that the circuit court clerk's office, not himself, had "prepare[d] the service," based on his specification of whom to serve in the caption, and that he had indicated university counsel was to be served because he "thought that this was the professional way to handle the situation." Lohr stated he would be "glad to file an amended complaint," because "Virginia Tech is not the party we are suing." But Lohr never sought leave to file an amended complaint.

After further argument addressing the immunity defenses raised by the BOV and Tully, the circuit court took the issues of immunity and the correct parties to the suit under advisement.

D. The Circuit Court's Ruling and Lohr's Motion to Reconsider

The circuit court issued an order granting the plea in bar as to both the BOV and Tully.[2] It held that the BOV was entitled to absolute and sovereign immunity and that Tully, as an agent of the BOV, was entitled to absolute and qualified immunity. The court dismissed the claim against the BOV with prejudice and the claim against Tully without prejudice. It also noted that at a previous hearing on a motion to hold the case in abeyance, the parties represented that the

_____

[2] In its order, the circuit court erroneously stated that it was "sustain[ing] the Demurrer as to both Defendants."

- 7 -

issue of the correct parties to the suit "was to be resolved as [Lohr] intended to serve the members" of the BOV.

Lohr filed a motion for reconsideration and to suspend the circuit court's order. He contended that the circuit court erred in its immunity rulings and dismissal of his claims against Tully and the BOV. He also sought resolution of the issue of the correct parties to the suit. Lohr asserted that "[s]ervice on the individual members [of the BOV] was achieved by acceptance of service . . . the same date" that the circuit court's order was entered. The circuit court issued an order to stay.

In responding to Lohr's motion for reconsideration, the BOV contended that "the argument to bring members [of the BOV] into this action in their personal capacit[ies] is misplaced," because Lohr's "complaint itself nowhere indicates that the members are before this Court in any personal capacity." Counsel for the defendants did acknowledge, however, at a hearing on the motion to reconsider, that Lohr was "correct that service was perfected. We agreed to perfect service about the same time the Court issued an opinion."

E. The Circuit Court's Final Order

In its final order, the circuit court first addressed whether the BOV was before the court "as a collective entity or . . . by each individual in their capacity as a member of the Board." The circuit court concluded there was an "ambiguity of the style of the case," given that: Lohr had styled his suit as against "Board of Visitors," followed by the caption "Currently" and a list of individual names; the list of board member's names was followed by the notation, "Each in his or her official capacity"; and that there was "a single address for requested service," i.e., the university's legal counsel. The circuit court contrasted this ambiguity with the "clarity of the style of the case as against Defendant Tully whose name is listed directly followed by the notation 'In her individual capacity' and her individual address for service." The circuit court

- 8 -

further noted that the style of Lohr's complaint was not the only source of ambiguity that "lends itself to the interpretation that [Lohr] sued the Defendant Board of Visitors as a collective entity." Count one of Lohr's complaint requested declaratory and injunctive relief "against the Board of Visitors" and twice more referred to the BOV as a "collective entity" in its requests for relief. The circuit court concluded that assuming Lohr intended to sue the individual BOV members in their official capacities, his pleadings did not "meet his fundamental obligation to unambiguously identify" them as the party against whom the claim was asserted. Accordingly, "[t]he Court was not clearly and unambiguously informed by the Complaint that [Lohr] intended to sue fourteen individuals in their official capacities."

Further, the circuit court again found that the BOV enjoyed sovereign immunity from Lohr's suit, but departed from its previous order by holding that its sovereign immunity finding rendered moot the issue of absolute immunity. Similarly, the circuit court found that Tully was entitled to qualified immunity, and thus the issue of her absolute immunity was moot. And with respect to Lohr's First Amendment retaliation claim against Tully, the circuit court noted that it was "first asserted . . . in [Lohr's] Response to Defendants' Plea in Bar," and thus failed to "put Defendant Tully on notice" of the claim. The circuit court lifted its stay, granted the plea in bar, and dismissed Lohr's claims with prejudice.

This appeal followed.

## II. ANALYSIS

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* (quoting *Hawthorne*, 279 Va. at 577). "We apply a de novo standard of review when '[t]here are no disputed facts relevant to the plea in bar and it presents a pure question of law.'"

*Smith v. Larrowe*, 86 Va. App. 276, 285 (2025) (alteration in original) (quoting *Smith v. McLaughlin*, 289 Va. 241, 251 (2015)).

Where, as here, "no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented.  In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Id.* (alteration in original) (quoting *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022)).  And "[a]lthough we grant the plaintiff any reasonable inferences derived from the factual allegations in the complaint, 'we give them no weight to the extent that they are *unreasonable*.'" *Id.* at 286 (quoting *Patterson v. City of Danville*, 301 Va. 181, 197 (2022)).  "The difference between the two turns on whether 'the inferences are strained, forced, or contrary to reason,' and thus properly disregarded as 'arbitrary inferences.'" *Coward v. Wellmont Health Sys.*, 295 Va. 351, 359 (2018) (first quoting *County of Chesterfield v. Windy Hill, Ltd.*, 263 Va. 197, 200 (2002); and then quoting *Stephens v. White*, 2 Va. (2 Wash.) 203, 210-11 (1796) (opinion of Roane, J.)).  "We also 'do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Smith*, 86 Va. App. at 286 (quoting *Patterson*, 301 Va. at 197).

A.  Identification of the BOV as a Defendant

Lohr contends the circuit court erred in finding that "the Corporate Body of the Board of Visitors," and not each member of the BOV "in His or Her Official Capacity," was the defendant to the first count of his complaint.  He argues that his complaint was "manifestly directed against each member of the Board in his or her official capacity, whether or not it was also directed against the Board."  Lohr further contends that any "imperfect service . . . was subsequently remedied."

"The party filing a civil action has the fundamental obligation 'to express the nature of the claim being asserted, *and the identity of the party against whom it is asserted*, in clear and

- 10 -

unambiguous language so as to inform both the court and the opposing party of the nature of the claim.'" *Ray v. Ready*, 296 Va. 553, 558 (2018) (quoting *James v. Peyton*, 277 Va. 443, 450 (2009)). "Whether a pleading has adequately identified the proper party to be sued is a question of law, which we review de novo." *Clutteur v. Rosier*, 79 Va. App. 55, 65 (2023) (quoting *Ray*, 296 Va. at 558).

Here, the circuit court did not err in determining that Lohr's pleadings did not adequately inform it that his suit was against the individual members of the BOV in their official capacities, rather than against the BOV as a corporate body. As noted by the circuit court, Lohr captioned his complaint in a manner that was ambiguous, but other evidence in the body of the complaint indicated that he was suing the BOV as a corporate entity. Specifically, Lohr's complaint requested declaratory and injunctive relief "against the Board of Visitors," and Lohr twice more referred to the BOV as a "collective entity" when specifying the relief he sought: "an injunction compelling the Board of Visitors" to set aside the disciplinary action against him and expunge records of the action, and "injunctive relief ordering the Board of Visitors" to effectuate expungement. Further, although unremarked by the circuit court itself, nowhere in the body of Lohr's compliant did he explicitly state that his suit was against the members of the BOV in their official capacities; rather, apart from the ambiguous caption of the complaint, all the internal textual evidence of Lohr's complaint supports that his suit was against the BOV as a corporate body. Accordingly, the circuit court did not err in finding that Lohr's complaint did not "clearly and unambiguously inform[]" it that Lohr "intended to sue fourteen individuals in their official capacities" and that, instead, Lohr's complaint was against the BOV as a corporate entity.[3]

_____

[3] We further note that although Lohr was free to seek leave to amend his complaint to correct any ambiguity, and represented to the circuit court that he would be "glad to file an amended complaint," he never did.

Additionally, Lohr's argument that he remedied any "imperfect service" is meritless, because the circuit court did not hold that the putative defendants were not unambiguously

B.  Receiving Lohr's Exhibits

Lohr argues the circuit court erred in receiving the three exhibits that were referenced in, but omitted from, his complaint "and thereafter construing those documents in Tully's favor."

Lohr has waived the argument that the circuit court erred in receiving his exhibits, because he did not object to the court receiving the exhibits per se.  Rather, his objection concerned the uses to which the circuit court might put the exhibits.  When the circuit court asked Lohr why defense counsel should not be permitted to submit the exhibits Lohr said were inadvertently omitted from his pleadings, he replied that he had "no concern with the Court ultimately seeing it that way" but that he did "have a concern with . . . the Court understanding what the appropriate standard of review [was] for this plea in bar."  Lohr further stated that his concern was "not with the Court seeing the documents" but "with clarity in concerning the appropriate standard of review."

"Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial."  *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *see also* Rule 5A:18 (requiring that a contemporaneous objection be "stated with reasonable certainty" in order to preserve an objection for appellate review).  "[T]he *precise* nature of the objection must be clear because '[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review.'"  *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329-30 (2021) (alterations in original) (quoting *Johnson v. Commonwealth*, 58

---

informed of the correct parties to the suit; rather, it was the court itself that was not clearly and unambiguously informed, based on Lohr's pleadings.  And although Lohr cites *Ghameshlouy v. Commonwealth*, 279 Va. 379 (2010), for the proposition that eventual service on the individual BOV members, and their "appear[ance] . . . waived any claim they were not defendants," his reliance on that case is unavailing.  The Court in *Ghameshlouy* only addressed questions of potential and active jurisdiction regarding a notice of appeal filed in this Court, not issues of notice of the parties to a suit to the trial court.  279 Va. at 389-90.  *Ghameshlouy* is thus inapposite.

Va. App. 625, 637 (2011)). Stated differently, "[n]ot just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Bethea*, 297 Va. at 743. Accordingly, "[p]ursuant to the contemporaneous objection requirement of Rule 5A:18, this Court will not consider an argument on appeal that was not presented to the trial court." *Mollenhauer*, 73 Va. App. at 329. Here, because Lohr did not object to the circuit court receiving and "seeing" his exhibits, but only to how those exhibits might be used by the circuit court, he has waived any objection to the exhibits' reception.[4]

Lohr has also procedurally defaulted his argument that after the circuit court received the exhibits, it erred by "construing" the exhibits "in Tully's favor." This is so because Lohr merely asserts that the circuit court thus construed the documents, stating, "[t]o the extent the Circuit Court's opinions then intimate Lohr was not disciplined substantially for his expressive conduct, the judge acted as a finder of facts, construing the evidence it received." Lohr neither proffers specific examples of how the circuit court allegedly misconstrued the exhibits, nor any specific arguments as to how the court's alleged misconstrual erroneously favored Tully.

"Rule 5A:20(e) requires that the appellant's opening brief contain '[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error.' As Virginia's appellate courts have repeatedly held, '[u]nsupported assertions of error "do not merit appellate consideration."'" *Church Mut. Ins. Co. v. Ephesus Richmond Seventh-Day Adventist Church*, 84 Va. App. 371, 380 (2025) (alterations in original) (first quoting Rule 5A:20(e); and then quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 744

---

[4] We further note that Lohr's references to the accompanying exhibits in his complaint "of itself and without more, ma[de] such exhibit[s] a part of the pleading." Rule 1:4(i); *see also Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 22 (2022) (applying Rule 1:4(i) and holding that a document attached as an exhibit to an amended complaint and "specifically referred to by the allegations of the complaint" was "before the circuit court").

(2017)).  Put simply, it "is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Coward*, 295 Va. at 367 (quoting *Bartley*, 67 Va. App. at 746).  Here, because Lohr fails to develop any specific arguments as to how the circuit court erroneously construed his exhibits in Tully's favor, he has waived this issue.

C.  Inadequate Pleading of Retaliation Claim

Lohr contends the circuit court erred in ruling he did not adequately plead a First Amendment retaliation claim against Tully.  He notes that the circuit court acknowledged he pled an "as-applied First Amendment challenge," argues this challenge adequately described "what is commonly called a First Amendment Retaliation Claim," and asserts that to distinguish between the two is to make "a distinction without a difference."

"[E]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense." *Lehmann v. WFV Holdings, LLC*, 80 Va. App. 802, 812 (2024) (quoting *Grayson v. Westwood Bldgs., L.P.*, 300 Va. 25, 69 (2021)); *see also Allison v. Brown*, 293 Va. 617, 626 (2017) (referring to "the bedrock requirement that a defendant must be notified in a complaint regarding what claim is being made against him").  Accordingly, "no litigant may recover on a right not [pleaded]," and "'[t]he basis of every right of recovery . . . is a pleading' setting forth the basis for granting the relief sought." *Catoctin Ridge Homeowners Ass'n v. Biller*, 84 Va. App. 306, 320 (2025) (alterations in original) (quoting *Graham v. Cmty. Mgmt. Corp.*, 294 Va. 222, 229 (2017)).  "Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or a right not pleaded and claimed." *Allison*, 293 Va. at 625-26 (quoting *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86 (2011)).

Here, Lohr's complaint did not plainly and explicitly state a First Amendment retaliation claim against Tully—that claim was first articulated only in Lohr's response to the defendants' plea in bar. A brief, however, is not a pleading. *See* Rule 3:18(a) (defining pleadings as "[a]ll motions in writing, including a motion for a bill of particulars and a motion to dismiss"). And Lohr's complaint not only failed to plead a retaliation claim in plain and explicit language, it also failed to specifically allege any retaliatory facts. The complaint is devoid of any language asserting that Tully "retaliated" or sought to "retaliate" or take "retaliatory" action against Lohr. Because Lohr's complaint failed to convey to Tully, in plain and explicit language, that First Amendment retaliation was a ground for the complaint, the circuit court did not err as alleged by Lohr.[5] *Lehmann*, 80 Va. App. at 812 (quoting *Grayson*, 300 Va. at 69).

D. Qualified Immunity

Lohr argues the circuit court erred in finding that Tully was entitled to qualified immunity for "punishing [him] for . . . First Amendment protected activity" and "compelling [him] to write a letter of acknowledgement."

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cromartie v. Billings*, 298 Va. 284, 299-300 (2020) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Taylor v. Barkes*, 575 U.S. 822, 825 (2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory

---

[5] During oral argument, Lohr contended that references in his complaint to *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005), "the leading Fourth Circuit opinion" on First Amendment retaliation claims, were sufficient to put Tully on notice of his retaliation claim. But simply citing a retaliation case and depending on a defendant's inference therefrom is not providing the "plain and explicit language" required for a "ground of complaint." *Lehmann*, 80 Va. App. at 812 (quoting *Grayson*, 300 Va. at 69).

or constitutional right that was clearly established at the time of the challenged conduct."

(quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012))). Determining if qualified immunity applies requires

> a two-part analysis: first, whether the evidence, "[t]aken in the light most favorable to the party asserting the injury . . . shows the [official's] conduct violated a constitutional right," and, second, whether the right at issue, when the evidence is viewed in the light most favorable to the plaintiff, was "clearly established" at the time of the violation.

*Cromartie*, 298 Va. at 300 (first and second alterations in original) (first quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001); and then quoting *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (applying analysis in context of motion to strike)). "To be clearly established, a right must be sufficiently clear 'that every "reasonable official would [have understood] that what he is doing violates that right."'" *Reichle*, 566 U.S. at 664 (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Determining whether a government official "is entitled to immunity is a question of law this Court reviews de novo." *Cromartie*, 298 Va. at 296.

Lohr first argues that Tully erred in disciplining him for "peaceable expressive conduct and words." Relying primarily on *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005), he applies *Constantine*'s tripartite test[6] for evaluating a First Amendment retaliation claim and contends that Tully should not have been entitled to qualified immunity for sanctioning his conduct. But as noted above, the circuit court correctly determined that Lohr did not plead a First Amendment retaliation claim against Tully. And the circuit court did not evaluate Lohr's claim against Tully as a retaliation claim; rather, it evaluated

---

[6] *See Constantine*, 411 F.3d at 499 (noting that in a First Amendment retaliation claim pursuant to 42 U.S.C.§ 1983, "[a] plaintiff seeking to recover . . . must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct").

- 16 -

that claim as pled by Lohr, as a facial and as-applied challenge to the constitutionality of Virginia Tech's student conduct policy. Applying the requisite legal tests for facial and as-applied constitutional challenges, and then the two-part test for qualified immunity defenses, the circuit court found that Tully was entitled to qualified immunity for disciplining Lohr. Because Lohr's argument on brief does not address the circuit court's actual analysis of and rulings on this issue, Lohr has waived his argument. *See Barnes v. Commonwealth*, 80 Va. App. 588, 595 (2024) (holding that appellant waived his assignment of error because it did not address findings or rulings of the trial court, and thus did not comply with Rule 5A:20(c)(2)); Rule 5A:20(c)(2) ("An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient.").

Lohr next argues that the circuit court erred in granting Tully qualified immunity "as to [his] compelled speech allegations, pertaining to [Tully's] mandate that he write a letter of acknowledgement." Lohr's accompanying argument on brief presents a series of compelled speech cases and contends that Tully's actions unconstitutionally compelled him to "affirm[] . . . a belief and an attitude of mind concerning the inappropriateness of [his] conduct." But even assuming arguendo that Lohr's argument establishes a violation of his First Amendment rights against compelled speech, Lohr has waived his argument. Here, the circuit court applied the two-part qualified immunity test with respect to Lohr's compelled speech claim and found that the claim failed to defeat qualified immunity on both prongs; that is, the circuit court found that Lohr both failed to show a violation of a constitutional right and that the right was one "of which a reasonable person would have known." *Cromartie*, 298 Va. at 300 (quoting *Harlow*, 457 U.S. at 818). Yet Lohr develops no argument on brief challenging the circuit court's ruling on the second prong of the qualified immunity test. Because the circuit court's finding on the second prong of the test was sufficient to sustain a qualified immunity defense and defeat Lohr's claim,

and Lohr fails to present an argument that the circuit court erred on the second prong, his qualified immunity argument is waived.

E. Absolute Immunity

Lohr assigns error to the circuit court for "ruling that Tully was entitled to absolute immunity." We need not address this argument on appeal, because ultimately, the circuit court made no such ruling.

In its first order sustaining the plea in bar and dismissing Lohr's claims, the circuit court found that "Tully, as an agent of the [BOV] is entitled to absolute and qualified immunity." But upon Lohr's motion for reconsideration, the circuit court stayed that order. And following a hearing on Lohr's motion, when the circuit court entered its final order, it "clarif[ied] the nature of the Defendants' immunity" by ruling differently on Lohr's claim against Tully. Rather than ruling that Tully enjoyed both qualified and absolute immunity, the circuit court held that Tully enjoyed qualified immunity, sustained her plea in bar on that ground and dismissed Lohr's claim with prejudice, and found that "[h]aving dismissed the claims [sic] against Defendant Tully, . . . her Plea in Bar asserting absolute immunity is moot." The circuit court's final order thus negated its prior ruling that Tully was entitled to absolute immunity, holding instead that because the court had dismissed Lohr's claim on the basis of Tully's qualified immunity, the issue of absolute immunity was rendered moot. Ultimately, therefore, the circuit court made no ruling on the merits on the issue of absolute immunity.

Where, as here, "there is no ruling by the trial court on [an] issue," there is "no basis for review or action by this Court on appeal." *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 526 (2006). Because the circuit court reconsidered its initial ruling on Tully's absolute immunity, held instead that the issue of absolute immunity was moot, and thus did not rule on Tully's absolute immunity, there is nothing for this Court to review on that issue.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's order sustaining the plea in bar.

*Affirmed.*