In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 24-1503

ONEAL JOHNSON,

*Plaintiff-Appellant,*

*v.*

RYAN EDWARDS, *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-00738 — **Lindsay C. Jenkins,** *Judge.*

———————

ARGUED SEPTEMBER 17, 2025 — DECIDED JANUARY 27, 2026

———————

Before SCUDDER, PRYOR, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Oneal Johnson sued four Chicago police officers alleging they violated his rights under the U.S. Constitution and subjected him to malicious prosecution under Illinois law. All his claims arise from the same incident in April 2019, when police arrested him for disorderly conduct and he was injured on the way to the police station. Police arrested Johnson because they concluded he refused to depart an active crime scene. And he was injured when, after

refusing officers' attempts to fasten his seatbelt in the backseat of a police car, the officer transporting him braked suddenly and sent him head-first into a plexiglass divider in the police car. The district court entered summary judgment against Johnson on all his claims, which he appeals. We affirm.

## I. Background

We first outline the underlying facts, then turn to this case's procedural history. We present the facts in the light most favorable to Johnson, and draw all reasonable inferences in his favor, because he opposes summary judgment. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020).

### A. Underlying Facts

Around 3:00 a.m. on April 21, 2019, Johnson was walking toward 75th Street and Champlain Avenue in Chicago. He encountered an active crime scene where the defendants, and other Chicago Police Department personnel, were investigating a shooting. Police tape had been placed around the scene by the time Johnson arrived. Several officers' body-worn cameras captured this encounter.

The police ordered Johnson to leave the scene—telling him he could not cross into the crime scene—which angered him. And the situation escalated quickly. Johnson yelled at the officers, used racial slurs, and swore repeatedly; some officers yelled and swore in response. Police told Johnson they would arrest him if he did not leave. They ordered him to depart many times.

Johnson sent mixed messages on whether he would comply with these orders. At one point he took a few steps away from the crime scene, suggesting he was leaving; at another he pointed toward the crime scene, said "I'm trying to go that

way[,]" "you don't tell me sh*t[,]" and "I'm going the other way… But I'm gonna check you b**ches in the door before I go, so I ain't trying to go that way, brother." It was after this last statement that police arrested Johnson.

Johnson was agitated as police put him in the police car and told them repeatedly to stop touching him. After he was in the car, officer Monica Mata (a defendant here) tried to put on his seatbelt. But Johnson refused, saying "I don't need that, get that sh*t off around me." Mata then asked if Johnson wanted a seatbelt, to which he said, "[h]*ll no. Get that sh*t off[.]" So Mata left Johnson's seatbelt unfastened.

Officers Ryan Edwards and Dennis Hecker, Jr. (also defendants here) took Johnson to the police station; Hecker drove. The car's dashboard camera recorded the drive from the perspective of the hood of the car, showing the hood and the street in front of the car, but nothing inside the car. The camera also recorded audio.

During the drive, officer Hecker drove quickly with the police lights on and passed through multiple red lights and stop signs without coming to a full stop. About two and a half minutes into the trip, as the car neared another red-light intersection, Johnson (who had been chattering the whole drive) told officer Hecker to slow down. Officer Hecker did so, braking harder than he had at prior stops. The stop was abrupt enough that the hood of the car pitched forward. This hard stop caused Johnson, whose hands were cuffed behind his back, to lurch forward in his seat and hit his head on the divider between him and the officers in the front seats. Hecker, presumably because he heard the impact, said "I'm sorry." Johnson cried out, then fell silent for the rest of the drive.

The car pulled into the police station around two and a half minutes after Johnson hit his head. It was then, after officers tried to get Johnson out of the car, that they realized he was unconscious. They tried to rouse him, and a minute later called for an ambulance. Johnson came to and requested to be taken to a hospital. When paramedics arrived they took him to a hospital, where he was diagnosed with and treated for a cut lip.

Though Johnson was later charged with disorderly conduct under the Municipal Code of Chicago for failing to obey an order of a peace officer, the charges were dropped in May 2019.

## B. Procedural History

In February 2021, Johnson (*pro se*) sued (among others) the four officers directly involved in his arrest and transport to the police station: Timothy Balasz, Ryan Edwards, Monica Mata, and Dennis Hecker, Jr. In March 2023, Johnson, now with *pro bono* counsel, filed an amended complaint that dismissed all but the defendants still named here. The amended complaint asserted four federal-law claims via 42 U.S.C. § 1983, and one state-law claim. The federal-law claims allege:

(1) false arrest in violation of the Fourth Amendment (against all defendants);

(2) state-created danger in violation of the Fourteenth Amendment's Due Process Clause (against Hecker and Mata);

(3) excessive force in violation of the Fourth Amendment (against Hecker); and

(4) failure to provide adequate medical care in violation of the Fourth Amendment (against Edwards and Hecker).

As for Illinois law, Johnson alleged malicious prosecution against all defendants.

The defendants moved for summary judgment, which the district court granted. Johnson, through his *pro bono* counsel, appealed. We thank *pro bono* counsel for their able advocacy on Johnson's behalf.

## II. Discussion

We review the district court's decision on summary judgment *de novo*, viewing all facts and drawing all reasonable inferences in favor of Johnson, the nonmovant. *James*, 959 F.3d at 314. Summary judgment is proper if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, we do not weigh evidence or make credibility determinations. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Johnson challenges summary judgment for defendants. We consider his claims below and ultimately affirm. But before doing so, we explain qualified immunity because it is the principal reason we must affirm.

### A.  Section 1983 and Qualified Immunity

Johnson brings his federal-law claims via 42 U.S.C. § 1983, a procedural vehicle to seek damages from a state official who violates constitutional rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To succeed, Johnson must overcome the "high

bar" of qualified immunity, which shields government officials from liability unless they violate clearly established law. *Lopez v. Sheriff of Cook County*, 993 F.3d 981, 988 (7th Cir. 2021).

To determine whether qualified immunity attaches, we ask: (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right," and (2) "whether the right was clearly established at the time of defendant's alleged misconduct." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) (cleaned up). If the answer under either prong is "no," immunity attaches and bars a claim. Qualified immunity is a question of law for courts, *Smith v. Finkley*, 10 F.4th 725, 734 (7th Cir. 2021), and we may discuss these two prongs in either order, *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

The first prong gets at the merits of Johnson's claim—whether a defendant in fact violated a constitutional right. The second prong, whether the right was clearly established, gets at whether the right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Lopez*, 993 F.3d at 988 (quoting *Reichle v. Howards*, 566 U.S. 658, 663–65 (2012)). Accordingly, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A right is clearly established when:

(1) "a closely analogous case" finds "the alleged violation unlawful[;]"

(2) the relevant caselaw shows such a clear trend "that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time[;]" or

> (3) in rare cases, the defendant's conduct was "so egre-
> gious and unreasonable that no reasonable official
> could have thought he was acting lawfully."

*Stockton v. Milwaukee County*, 44 F.4th 605, 620–21 (7th Cir. 2022) (citations omitted). The Supreme Court has told us many times to look for rights "defined with specificity[;]" rights defined only at "a high level of generality" are not clearly established for the purposes of qualified immunity. *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019) (collecting cases).

"Qualified immunity balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "At the heart of this justification for a qualified immunity for the individual official is the concern that the threat of personal monetary liability will introduce an unwarranted and unconscionable consideration into the decisionmaking process, thus paralyzing the governing official's decisiveness and distorting his judgment on matters of public policy." *Owen v. City of Independence*, 445 U.S. 622, 655–56 (1980) (emphasis removed).

With these principles in mind, we turn first to Johnson's false-arrest claim.

## B. False Arrest

In Count I of his amended complaint, Johnson alleges all defendants arrested him without probable cause and thus violated the Fourth Amendment's bar against unreasonable seizures. We do not need to address, however, whether officers

in fact had probable cause to arrest Johnson. Regardless of whether probable cause existed, defendants are entitled to qualified immunity because probable cause was at least arguable.

"To prevail on a Fourth Amendment false-arrest claim, a plaintiff must show that there was no probable cause for his arrest." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (cleaned up). In the context of qualified immunity, if probable cause is arguable, a plaintiff cannot show an officer violated her clearly established right to be free from arrest. Accordingly, "a reasonable officer [who] could mistakenly have believed that he had probable cause to make the arrest" is entitled to qualified immunity. *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012) (emphasis removed). "Arguable probable cause" exists where "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law[.]" *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022) (citation omitted).

To determine whether defendants arguably had probable cause to arrest Johnson, we must look to the offense underlying his arrest. *See Doe v. Gray*, 75 F.4th 710, 719 (7th Cir. 2023). That offense is disorderly conduct as defined by the Municipal Code of Chicago. A person commits disorderly conduct under the code when he knowingly "[f]ails to obey an order by a peace officer … issued under circumstances where it is reasonable to believe that the order is necessary to allow public safety officials to address a situation that threatens the public health, safety, or welfare[.]" Chi., Ill., Mun. Code § 8-4-010(e).

We conclude defendants had at the very least arguable probable cause to arrest Johnson for disorderly conduct—for failing to obey police's orders to depart, which they issued to protect an active crime scene. When Johnson encountered defendants, they were investigating a recent shooting in the area and guarding an active crime scene. That context carries significant weight. Crime scenes are sensitive places, and law enforcement may take reasonable steps to "secure crime scenes and accident sites" to "protect the integrity and confidentiality of investigations." *ACLU v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012). Though police told Johnson repeatedly he could not enter the active crime scene, he stayed put and sent mixed messages about whether he would comply with officers' orders. Police were understandably concerned about preserving the scene and ordered Johnson to depart many times, yet he remained. On these facts, probable cause arguably existed to arrest Johnson for disorderly conduct as the Municipal Code of Chicago defines it. We certainly could not conclude officers had no arguable basis to find probable cause on such facts.

Johnson, in opposing that probable cause was arguable, analogizes his case to two others, one from a Massachusetts district court and another from the Eighth Circuit. Setting aside that neither case binds us, each is distinguishable.

In *Waterman v. City of Taunton*, 742 F. Supp. 3d 144, 159–60 (D. Mass. 2024), the district court held a defendant lacked even arguable probable cause to arrest a plaintiff—who screamed profanities at officers from his front porch—for disorderly conduct. But unlike the case before us, officers in *Waterman* arrested plaintiff outside his home, not adjacent to an active crime scene. *Id.* at 152–53. The Eighth Circuit case Johnson cites, *Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir.

2010) (per curiam), is similarly inapt. It too does not address police guarding an active crime scene. Rather, police there arrested plaintiffs for disorderly conduct after plaintiffs protested "mindless consumerism" by "dress[ing] in zombie costumes, walk[ing] erratically, and broadcast[ing] anti-consumerism statements over" a speaker. *Id.* at 477.

Given law enforcement's many orders to depart the crime scene and their strong interest in preserving it, defendants could have reasonably concluded they had probable cause to arrest Johnson for disorderly conduct under the Municipal Code of Chicago. Accordingly, defendants are entitled to qualified immunity for Johnson's false-arrest claim.

## C. State-Created Danger

In Count II, Johnson alleges officers Hecker and Mata violated the Fourteenth Amendment's Due Process Clause by exposing him to a state-created danger: failing to fasten his seatbelt while knowing he was handcuffed and could not brace himself against sudden movements of the police car. Because we conclude defendants are entitled to qualified immunity on this claim as well, we affirm.

The Due Process Clause of the Fourteenth Amendment says that "[n]o state shall … deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "[D]ue process 'generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests[.]'" *Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Indeed, the Supreme Court has cautioned that the Clause "does not transform every tort

committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202. That said, "[t]here are two recognized exceptions to the *DeShaney* rule." *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019). The one at issue here is the state-created-danger doctrine.

"[W]hen a public official affirmatively places a particular individual in a position of danger the individual would not otherwise have faced, the official may be liable for a due-process violation if injury results." *Id.* (cleaned up). This is a "narrow" doctrine that is "reserved for 'egregious' conduct by public officials." *Id.* (citation omitted). To recover for injuries resulting from a state-created danger, a plaintiff must prove that the state created or increased the danger to them, that its failure to protect them caused their injury, and that its behavior shocked the conscience. *King v. East St. Louis School District 189*, 496 F.3d 812, 817–18 (7th Cir. 2007).

Merits aside, Johnson cannot overcome qualified immunity because he has not shown he had a clearly established right to be free from the unbelted car ride he suffered. He has pointed to no case discussing state-created danger based on facts like these. Rather, the precedent he relies on primarily discusses Eighth Amendment claims, which involve a distinct (if somewhat analogous) analysis from state-created danger under the Fourteenth Amendment. *See Est. of Her*, 939 F.3d at 876 (observing the "shocks the conscience" element of a state-created-danger claim "requires a culpable state of mind equivalent to deliberate indifference," but listing other elements not required for an Eighth Amendment claim).

Even setting this difference aside, the Eighth Amendment cases Johnson cites are inapplicable because they address far worse conduct. For example, Johnson cites *Thompson v.*

*Virginia*, 878 F.3d 89 (4th Cir. 2017). In *Thompson*, defendants subjected the plaintiff, a Virginia prisoner, to a "rough ride" while transporting him to a hearing. *Id.* at 94. During the ride, plaintiff said defendants intentionally drove erratically—by speeding, stopping suddenly, and turning sharply—to throw him about the back of the van. *Id.* "Meanwhile, [plaintiff's] restraints prevented him from protecting himself from slamming against the walls of the van" repeatedly. *Id.* Plaintiff pled with officers to stop, but they did not; they instead "laughed and taunted him." *Id.* at 94–95.

Though we do not doubt Johnson here suffered a painful injury during his ride to the police station, his facts fall far short of those in *Thompson*. Remember, Johnson was not seatbelted because he refused officers' attempt to secure him. The officer driving apologized for the single stop that injured Johnson, revealing a less culpable state of mind than the officers possessed in *Thompson*. And perhaps most importantly, the plaintiff in *Thompson* was subjected to multiple driving tactics apparently intended to cause harm by throwing the plaintiff about the back of the van. Accordingly, we cannot say *Thompson* clearly established Johnson's right to be free from the ride he underwent at defendants' hands. Thus, we hold defendants are entitled to qualified immunity on his state-created-danger claim.

### D. Excessive Force

In Count III, Johnson alleges officer Hecker used excessive force in violation of the Fourth Amendment while transporting him to the police station. Specifically, he alleges officer Hecker subjected him to a "rough ride" by "intentionally" coming "to a sudden stop," causing him "to lurch forward" and hit his head. But whether officer Hecker in fact used

excessive force in braking too hard, Johnson's claim on this front—like his state-created-danger claim—fails for qualified immunity.

We determine whether force is excessive in violation of the Fourth Amendment by asking whether the officer's actions are "objectively reasonable in light of the facts and circumstances confronting" the officer. *Lopez*, 993 F.3d at 987 (quoting *Graham*, 490 U.S. at 397). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. We conduct this analysis "without regard" for the officer's "underlying intent or motivation." *Id.* at 397.

What force is reasonable is highly fact-bound, making it "especially important" to define rights specifically as we analyze qualified immunity in this context. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (citation omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.* (cleaned up).

Johnson argues he had a clearly established right against "the gratuitous use of force on an unarmed, restrained misdemeanant arrestee." But this defines the inquiry too broadly. In *Sallenger v. Oakes* (a case Johnson cites), for example, officers "delivered repeated, closed-fist blows and blows with flashlights" to a plaintiff after he was already handcuffed, and "continued to strike [him] … after he had stopped trying to kick or move[.]" 473 F.3d 731, 740 (7th Cir. 2007) (citation omitted). In analyzing qualified immunity, we asked

specifically whether it was clearly established that: "administering closed-fist punches and flashlight blows, including ones to the head, after the arrestee was handcuffed, continuing to strike him after he had stopped resisting arrest and failing to place him in the proper position after hobbling him" violated the Fourth Amendment. *Id.* at 742.

As in *Sallenger*, we must determine whether Johnson had a clearly established right to be free from the specific conduct at issue—here, braking too hard at a red light while he was not wearing a seatbelt. We conclude he did not. None of the precedent Johnson cites would put officer Hecker on notice that Hecker's conduct violated the Fourth Amendment.

For example, Johnson cites *Stockton v. Milwaukee County*, 44 F.4th 605 (7th Cir. 2022). Setting aside that this case arose under the Eighth Amendment and after the events at issue in this case, it did not address an alleged "rough ride" at all. There, we held qualified immunity did not protect a defendant who propped up a stumbling inmate, then intentionally let the inmate fall to the ground and "hit his head 'very hard' on the floor[,]" all while swearing and screaming at him. *Id.* at 620. The same goes for *Sallenger*, in which we denied qualified immunity to defendants who arrested a plaintiff and then senselessly beat him into the ground even after he was secured and stopped moving. 473 F.3d at 740.

The only authority that Johnson offers addressing police transport claims directly is out-of-circuit, though this alone is not dispositive. In assessing whether a right is clearly established, we first look to "controlling Supreme Court precedent and our own circuit decisions on the issue[.]" *Gray*, 75 F.4th at 717 (citation omitted). After doing so, we may then look to "all relevant caselaw" and ask "whether there was such a

clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (citation omitted).

But we cannot say the out-of-circuit cases Johnson cites meet this standard. Only one case addresses a Fourth Amendment claim involving post-arrest transport by police, and its facts are worse. *See McCowan v. Morales*, 945 F.3d 1276, 1280 (10th Cir. 2019) (denying qualified immunity to a defendant who engaged in "fast, jerky driving" that "repeatedly slammed" a plaintiff "throughout the backseat 'like a ping pong ball,'" and laughed while the plaintiff begged him to slow down). The other arose under the Eighth Amendment in the prison context.[1] *See Thompson*, 878 F.3d at 102. Though this case offers some support for the viability of Fourth Amendment "rough ride" claims, it is not enough to show a "clear trend" that would have fairly put officer Hecker on notice his conduct was unlawful.

In sum, many of the cases Johnson cites do not address alleged rough rides. And those out-of-circuit cases that do are distinct because officers' conduct in those cases was far worse than officer Hecker's. Thus, officer Hecker is entitled to qualified immunity against Johnson's excessive-force claim.

---

[1] Johnson also cites *Scott v. Becher*, 736 F. App'x 130 (6th Cir. 2018) (reversing dismissal for qualified immunity where defendant's driving of a prison van "catapulted" a plaintiff out of his seat and "slammed [him] down onto his head, neck, and back"). *Scott* not only arose in the Eighth Amendment context, but is an unpublished, nonprecedential opinion from a sister circuit, so we do not consider it further.

### E.  Failure to Provide Adequate Medical Care

In Count IV (Johnson's final federal claim), Johnson alleges officers Edwards and Hecker, in violation of the Fourth Amendment, failed to provide him adequate medical care after he hit his head. Though defendants called paramedics after they arrived at the station and realized Johnson was hurt—just a few minutes after he hit his head—Johnson says defendants should have done more. Because Johnson cannot overcome qualified immunity here, either, we affirm.

Johnson's claim arose from facts that occurred before a probable-cause hearing, so it is governed by the Fourth Amendment. *Village of Palatine*, 56 F.4th at 551. We thus ask, weighing factors such as "the seriousness of the medical need" and "the scope of the requested treatment," whether officers Edwards and Hecker acted in an objectively reasonable way. *Id.* (cleaned up). Johnson must also show the delay caused him "some degree of harm" using "verifying medical evidence[.]" *Jackson v. Sheriff of Winnebago County*, 74 F.4th 496, 500–01 (7th Cir. 2023).

In support of his argument that he had a clearly established right to better treatment from defendants, Johnson cites, though he does not discuss, two district court cases that post-date the facts here: *Kudla v. City of Hammond*, 2022 WL 2171229, at *5 (N.D. Ind. June 16, 2022), and *Snukis v. Taylor*, 2022 WL 2305697, at *2 (S.D. Ind. June 27, 2022). But a handful of district court cases does not clearly establish a constitutional right. *See Lojuk v. Johnson*, 770 F.2d 619, 631 (7th Cir. 1985) (stating that one analogous circuit court case, one analogous district court case, and several other distantly related cases were not enough to clearly establish a constitutional right). Johnson also distinguishes *Pulera v. Sarzant*, on which

the district court below relied, where we found officers acted reasonably in rendering emergency aid. 966 F.3d 540, 556 (7th Cir. 2020). But concluding that certain conduct *is* constitutionally reasonable, without more, generally does not establish that different conduct is constitutionally *unreasonable* for the purposes of qualified immunity.

With no precedent showing defendants clearly violated the Constitution in merely calling for paramedics when they arrived at the police station, we hold that qualified immunity bars Johnson's claim.

### F. Malicious Prosecution

In Count V (Johnson's sole state-law claim), Johnson alleges all defendants violated Illinois law by prosecuting him maliciously. We agree with the district court that this claim necessarily fails because Johnson cannot show defendants acted with malice.

Under Illinois law, a plaintiff must meet five elements to prove malicious prosecution. *Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)). Failing to prove any element forecloses a plaintiff's claim. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 74. "Malice[,]" the element that matters here, is "the initiation of a prosecution for an improper motive," meaning "any reason other than to bring the responsible party to justice." *Id.* at ¶ 141. "The element of malice may be inferred from a lack of probable cause when the circumstances are inconsistent with good faith by the prosecutorial team and lack of probable cause has been clearly proved." *Id.*

In opposing summary judgment below, Johnson argued only that "lack of probable cause" to arrest him "raises an

inference of malice[.]" Yet on appeal Johnson now argues a jury could infer malice based on his apparently litigious history "with the Chicago Police Department and the Defendant officers more specifically[.]" Johnson forfeited this specific argument by not making it below, so we do not consider it. *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (*en banc*).

As for Johnson's argument about lack of probable cause showing malice, we have already concluded that officers had at least arguable probable cause to arrest Johnson for disorderly conduct. *Supra*, at 10; *see Mwangangi*, 48 F.4th at 825. We thus affirm the district court's dismissal of this claim for lack of malice.

### III. Conclusion

For the foregoing reasons, we AFFIRM.